<hr />

WILLIAM B. HOGAN et al. v. BOLIN C. BURNETT et al.

1. CHANCERY: PLEADING: FRAUDULENT CONVEYANCE.—An allegation in a creditor's bill filed to set aside a fraudulent conveyance, "that the conveyance is void on its face and fraudulent as to creditors," is insufficient to render the facts appearing on the face of the conveyance competent evidence to establish fraud, unless it be also alleged in the bill that the conveyance was made with the intent to hinder, delay, or defraud creditors.

2. JUDGMENT: NO LIEN ON EQUITABLE ASSETS.—A judgment is not a lien on the equitable assets of the debtor.

3. CHANCERY: WHERE EQUITIES EQUAL, THE LEGAL TITLE WILL PREVAIL.— Where the defendant has an equal equity with that of the complainant, and has also the legal title, a court of equity will not grant relief against him.

ERROR to the Chancery Court of Monroe county. Hon. Joel M. Acker, chancellor.

The complainants, Moye and Adams and Bolin C. Burnett, filed this bill in the court below against William B. Hogan, George W. Hardy, Newton H. Dobbs, and James N. Walton, for the purpose of subjecting certain equitable assets alleged to belong to one R. S. Jones, to the payment of their judgments.

The bill alleges that on the 8th of October, 1852, said Moye & Adams recovered a judgment in the Circuit Court of Monroe county against said R. S. Jones, principal, and said B. C. Burnett, as his surety, for the sum of $404 37 and costs ; and that on this judgment an execution issued, and Jones having no unincumbered property, it was levied on the property of said Burnett, the surety, who satisfied and paid the same. That on said 8th of October, 1852, the said Moye & Adams recovered another judgment in the same court against said Jones for $840 40; and that execution was issued on this last-named judgment and returned *nulla bona;* and that

both of the judgments were duly enrolled, and were liens on the property of Jones from the date of their rendition.

It is further alleged that executions from these judgments could not be levied on Jones's property, because all his property, real and personal, was incumbered by the deeds in trust hereinafter mentioned; that Jones died in November, 1853, and the defendant Hogan was appointed his administrator; and that afterwards his estate was declared insolvent.

The bill further alleges that on the 1st March, 1846, said Jones conveyed all his property, by a deed in trust, to one Stewart, to secure certain debts therein mentioned. That on the 21st June, 1849, he made another deed in trust, by which he conveyed to one Capp, section 23, in township 15, range 7 east, to secure certain debts therein mentioned. That both of these deeds were duly recorded, and the last one still remains unsatisfied of record. It is also alleged that the collection of these debts was stayed by injunction until the 5th day of April, A. D. 1855, when L. Houghton, who had previously been appointed a trustee, sold all the property described in these deeds to satisfy the debt secured by them, except said section 23, in township 15, range 7 east, and two slaves, Henry and Edwin.

The bill further alleges that said Jones, being then largely indebted and in failing circumstances, on the 6th of January, 1853, and after the rendition of the judgments in favor of Moye & Adams before set out, executed another deed in trust to the defendant, Walton, as trustee, to secure the payment of a note made by said Jones as principal, and the defendants, Hardy and Hogan, as sureties, to Samuel J. Gohlson for the sum of $2322 80; and that said deed appears by the record of the Probate Court of Monroe county to have been recorded on the 7th December, 1853. That said two first-mentioned deeds shielded and protected all the property of said Jones from the executions of complainants; and that said last-mentioned deed was executed "while Jones was greatly embarrassed and in failing circumstances, conveying all the property which he owned or claimed, and in which he had but an equitable interest, and providing that all of said property should be sold for cash to the highest bidder; and after the payment of said sum of $2322 80, that the residue should be paid to the said R. S. Jones,

thus effectually hindering, delaying, and defrauding the complainants in the collection of their debts."

The bill further charges, that immediately after the sale, under the two first-mentioned deeds in trust, by Houghton, the trustee, said Walton, the trustee in the last-mentioned deed, took possession of said section 23, and the negroes Henry and Edwin; and, notwithstanding complainants gave public notice of their judgments and liens, and forbid the sale, the said Walton sold the same, not for cash, as provided in the deed, but on a credit, taking bills of exchange from the purchasers; that at said sale, Hardy became the purchaser of Edwin, at the sum of $880, and one Rogers of Henry, for $990, and the defendant Dobbs bought the land for $1408; and that said property sold for less than two-thirds of its value. The complainants "therefore charge, that said deed is void on its face, and fraudulent as to creditors," and that the sale thereunder is also void.

It is further alleged, that no money had been paid by the purchasers, and that they bought with full notice of the liens of complainants' judgment.

In the prayer of the bill, it is sought to have the last deed in trust, and the sale made thereunder, declared void, and to subject the property to the payment of the judgments, and to subrogate Burnett, the surety in one of the judgments, and who had paid the same, to the rights of Moye & Adams in that.

The deed in trust made to Walton, and which is charged to be fraudulent, is dated 6th of January, 1853, and recites the suretyship of Hogan and Hardy, as stated in the bill, and provides, that if Jones "shall fail to pay off and discharge the said debt, or otherwise release the said sureties from their liability on it, by the time the debt falls due, then it shall be the duty of the trustee, upon the warrant of either or both of the sureties," to advertise for six weeks, and "to sell the said property at public sale for cash," and "out of the proceeds pay off and discharge, first, the expenses of this trust and said sale; next, pay off and discharge the said debt and interest, and if there should remain any balance, to pay the same to' Jones." The deed also provided, that Jones shall retain possession until default made in the payment of the debt.

It appears from the certified copy of this deed, that it was

recorded on the 7th December, 1853, but the certificate of the clerk on the original deed showed that it was recorded on the 7th January, 1853; a deposition of the clerk showed this fact also.

A plea was filed to the bill, but it is unnecessary to set it out.

The answer of the defendants admitted the execution of the three deeds in trust, as stated in the bill, and the recovery of the judgments by complainants. It denies, that there was any fraud or fraudulent intent in the execution of the last deed, and insists that it was fair, honest, and *bona fide;* it states, that the sale was made on a credit to prevent a sacrifice of the property; denies that complainants objected to the sale, but, on the contrary, were present, and publicly consented to the same. It states that the purchase by Dobbs and Hogan was fair and *bona fide,* and that they have paid for the same, and that Hogan and Hardy had paid the debt to Gholson. The answer denies that all the property of Jones was conveyed, and states, that a negro woman remained after all the trust debts were paid.

Other defences are set up by the answer, but it is unnecessary to state them.

On final hearing, the chancellor decreed the deed to Walton fraudulent, and the sale thereof void, and directed the property to be sold to pay the complainants' judgments.

From this decree complainants sued out this writ of error.

*Yerger* and *Rucks,* for plaintiffs in error.

1. The suggestion, that the deed of trust, under which the defendants purchased, was not recorded until the 7th of December, 1853, is a mistake in point of fact. This is shown by the testimony of the clerk, who proves that the deed is recorded in his book of records, in the month of January, 1853, and that the certificate at the foot of the deed in the record book, reciting that it was recorded on the 7th of December, 1853, was a clerical misprision in the date. If necessary to the defence, it would be perfectly competent to correct this, and to establish the true date by proof. 1 Pick. 271; 11 Ib. 28; 4 Dev. 319; 2 Binney, 514.

But we need not rely upon the power of amendments to correct clerical mistakes in this case, because the certificate on the original

deed fixes the date of the registry to have been the 7th, and the filing of the deed the 6th of January, 1853.

This certificate is made in accordance with the statute; see Hutch. Code, 607, ch. 42, § 10; and is the best evidence of the time when the deed was filed and recorded. The statute requires this certificate to be placed on the original deed, and does not require the clerk to enter or note in his book of records, either the day the deed is filed for record, or when recorded.

2. It is conceded in the bill, that at the time these judgments were rendered, Jones did not have the legal title to the property in controversy. It is also conceded that these judgments are not liens at law upon the property. But it is said that that there is an equitable lien, which a court of chancery will enforce. To this suggestion, I would remark, that the very case cited by counsel, *Bennett* v. *Roach*, 24 Miss. R. 103, announces the rule of law to be, that judgments are not liens on equities. In that case, it is said that "although judgments cannot operate as liens on mere equities, yet courts of equity will regard and treat them as liens on mere equities, and enforce them accordingly, by placing the judgment-creditor in the place of the judgment-debtor." But this simply means that a party having attained a judgment at law, to satisfy which he cannot reach legal assets, a court of equity will appropriate the equitable assets of the debtor to its payment. But the court did not decide, or intend to decide, that a judgment-creditor would have a right to appropriate equitable assets in preference to any other *bona fide* creditor or purchaser, who had attained an assignment of them, before the right to appropriate them in equity had been fixed by suing out execution at law, and having a return of "*nulla bona.*" On liens, see *Dozier* v. *Lewis*, 27 Miss. R. 679.

3. But this case is shown to be one in which courts of equity always decline to interfere.

The complainants are creditors seeking to enforce judgments against an insolvent debtor. The defendants, Hogan and Hardy, became the sureties of that debtor, and took a conveyance of the property in dispute to indemnify them as sureties. They have had the money to pay, and have become the purchasers of this property under the deed of trust. This certainly gives them an equal equity with complainants. But, in addition thereto, they have by their

purchase, become vested with the legal title, and are in possession of the property.    Under these circumstances, the principle is well established, that where the equities are equal, the legal title shall prevail.    Story's Eq., § 1503.

Even if he did not have a perfect legal title, if a defendant have in conscience an equal right, his situation, as defendant, renders it improper for a court of equity to interfere against him.  Ib. §§ 1502, 1503.

4.  Burnett having, as surety of Jones, paid the judgment, does not occupy the position of a judgment-creditor of Jones, and, therefore, has no right to come into equity to enforce his demand.    The payment by Burnett extinguished the judgment, which could not be enforced, either at law or in equity, against the debtor.   2 Vesey, 569; 1 Ib. 339; *Copis* v. *Middleton,* 1 Turn. & Russ. 229; 4 Russell, 297; 3 Mylne & Keene, 183; 1 Dev. & Bat. 366; 6 Ala. R. 797.

The case of *Conway* v. *Strong et al.* 24 Miss. 666, does not militate against this view.    That only decided that an indorser on a bond, against whom judgment had been obtained, had a right to an assignment in equity, on paying the judgment, to a prior judgment obtained against the principal debtor.

5.  Touching the question of fraud,.I beg leave to suggest that the bill does not even hint that there was any fraud in fact, and the whole case shows there was not.   Hogan and Hardy became the sureties of Jones, for money actually lent him, and at the time they became sureties, took the deed of trust as their indemnity.    They were thus *bona fide* purchasers, and are entitled to protection as such.    The case is thus relieved from every suspicion of fraud as to them.

The stipulations in the deed, that Jones was to retain the property till default made, and that the surplus remaining after payment of debt should revert to the grantor, are not fraudulent in themselves, even where a debtor makes a conveyance to secure antecedent debts.   4 S. & M. 229; 24 Miss. 107.

But when contained in a deed, the consideration of which is a present liability assumed, or money advanced by the *cestui que trust,* they are not even suspicious circumstances.

*F. M. Rogers*, on same side.

1st. The judgment of *Moye & Adams* v. *R. S. Jones*, in the Circuit Court, was rendered in 1852, and is in the same condition as the judgment, noticed in the brief of W. N. Hogan, of *Spratts* v. *Garner*, *Nevill & Co. et al.*; and I refer to the same authorities, viz., *Michie* v. *The Planters' Bank*, 4 How. R. 130; 1 Peters' R. 443; *Conard* v. *Atlantic Insurance Company*, 6 How. R. 530; 23 Miss. R. 298.

2d. The judgment of *Moye & Adams* v. *R. S. Jones & Boling C. Burnett*, was fully paid off and discharged, as stated by Burnett in the bill, and admitted by the answer; therefore, it constituted no lien on Jones's property, and Burnett having paid the judgment as security, he became only an ordinary creditor of Jones, and not a judgment creditor, the execution being satisfied. No other execution could issue from the judgment, and Burnett should have obtained a judgment against Jones before he could come into a court of chancery for relief. *Farned* v. *Harris*, 11 S. & M. 366; *Brown Brothers & Co.* v. *The Bank of Mississippi*, 31 Miss. R. 454; *Dozier* v. *Lewis*, 26 Miss. 679. And even if it was not paid, it was in the same condition of the judgment of *Moye & Adams* v. *R. S. Jones*, inoperative, and therefore no lien on Jones's property.

3d. The appellees allege, in their bill of complaint, that they were present at the sale under the deed of trust, when Hogan and Dobbs purchased, and forbid the sale, and gave notice of their liens. In response to that allegation, both Hogan and Dobbs positively deny that they forbid the sale; but state that they were present and released their liens, and consented to the sale under the deed of trust. The answers then are to be taken as true, being responsive to the bill.

The counsel for complainants takes the position that the deed of trust is fraudulent on its face, and relies, I presume, upon a case in 26 Ala. 172, *Montgomery Executors* v. *Kirksey*, and a case in 6 Hill, New York Reports. Upon examination the court will see that the decision in Hill was made upon a New York statute, and the case in 26 Ala. does not decide that the deed was fraudulent on its face; nor do the facts in the Alabama case agree with the deed here. As there was no evidence of fraud in this case—for all

fraud is denied by the answer—and the complainants attempted to introduce no evidence of fraud, the only question is, is the deed fraudulent on its face ?    1st. There is no evidence that Jones was insolvent when he executed the deed of trust; and, 2d. It was not in proof, nor does the deed on its face show, that he included all of his property in the deed; but the answer of Hogan shows the contrary, for his answer states, that after the sale by Houghton, the acting trustee under the other deeds of trust mentioned in the bill of complainant, there was still property left, which was not included in this deed.

This deed, on its face, is not liable to the objections in the case of *Henderson* v. *Downing et al.* in 24 Miss. R. 106, for there is no reservation in this deed for any of the property to the grantor, nor did the grantor stipulate for delay. The deed is in the usual form; shows upon its face that it was made to secure the securities of the grantor; makes no reservation to himself whatever, except that which the law gives him; the property to remain in his possession until the law day of the deed, and the surplus, if any, after paying the debt provided for, to be handed over to him, all of which he was entitled to under the law. Both of these points are expressly decided in our favor in the Alabama decisions : 1st, in *Elmes* v. *Sutherland*, 7 Ala. Rep. 262, the debtor clearly has the right until the law day, to remain in possession of the property; and until the law day has passed, his possession is neither fraudulent *per se*, nor evidence of fraud. 2d, in *Hindman* v. *Dill*, 11 Ala. Rep. 689, Judge Goldthwaite decides, that a deed of trust which provides that the surplus, after paying the debt provided for in the deed, should be paid over to the grantor in the deed, is not void on its face. And in his opinion delivered in that cause, the learned judge alludes to the decision in 6 Hill, and shows that the decision was made upon a statute of New York.

We contend that there is no feature in this deed which shows that it was made with the intent to hinder, delay, or defraud creditors; it was fairly made to secure Hogan and Hardy, the securities of Jones, and could not have had the effect to hinder, delay, or defraud any of these complainants, each of whom being judgment creditors, could have issued their executions, and levied on the property; and in *Dubose* v. *Dubose*, 7 Ala. Rep. 235, it is decided that any exe-

cution creditors may compel creditors secured by mortgage or deed of trust, to close the trust by sale, and distribute the surplus, if any will be the probable result of a sale. But taking into consideration all the facts in this case, how could any of these complainants be hindered, delayed, or defrauded by this deed?

As there was no evidence of fraud, and every allegation of fraud in the bill being positively denied, and the allegation that Jones conveyed all his property also denied, the court is now sitting in judgment on the deed itself; it must be tried by its own stipulations and declarations, and is just such a deed as any person in the community has a right to make or to accept. This deed of trust differs from a general assignment of all of a grantor's property.

It does not appear from the face of this deed (and it is to be tried by its face, for that is the allegation in the bill), that Jones had a creditor in the world, or that he owed debts besides the one he was then providing for. *A. Pope & Son* v. *Wilson*, 7 Ala. Rep. 690.

Before a deed of trust can be determined to be fraudulent on its face, the intent to hinder and delay creditors must be apparent on its face, and the court will see that in all those cases, where the deeds have been declared fraudulent on their faces, they were deeds of assignments made by persons insolvent, and attempting to make provisions for themselves.

Jones had a right to sell his property on the 6th day of January, 1853, and if Dobbs or Hogan had purchased the property for a fair price, then could the complainants here have filed their bill, and obtained a decree for the property fairly purchased and paid for? If the creditors had had liens on the property, they could have levied their executions on the property; and, I presume, this court will say that if you have any remedy, it is at law, and not in a court of chancery.

If a man owes a number of debts, he certainly has the right to sell property to pay one of those debts. Because a man may be in debt, the court will not assume guardianship over him, and force him to pay one creditor, or set of creditors, above another, but will permit him to prefer creditors.

*W. F. Dowd*, for defendant in error.

It is admitted in the pleadings, that Burnett, as surety for Jones,

paid the judgment. It is gravely urged that this is a satisfaction of the judgment, and the only remedy of the surety is a suit at common law for money paid. A statement of the general principle, that a surety, who has paid the debt, may be subrogated to all the liens, rights, and equities of the creditor, is all that is deemed necessary. *Conway* v. *Strong*, 24 Miss. 665. And a surety in a judgment may file a creditor's bill in his own name, to subject equitable assets. 1 Leading Cases in Equity, 110 ; 3 Leigh R. 272 ; 6 Paige, 254 ; 10 Johnson, 524 ; 4 Grattan, 81.

The next error complained of is, that the court erred in rendering a decree in favor of Moye and Adams. This, we suppose, was intended to cover the whole decree, which declares the deed of trust, Exhibit No. 3 to the bill, fraudulent and void.

The 44th Art. of the Code, 547, provides that facts alleged in the bill, and not denied in the answer, otherwise than by the general traverse, may be taken at the hearing as admitted.

It is then admitted by the pleadings, that Jones was largely indebted and in failing circumstances ; that complainants' judgments were rendered, and executions returned *nulla bona*, except the one paid by the surety Burnett, which was rendered ; that by virtue of the two deeds, Exhibits No. 1 and 2 to the bill, all of Jones's property was incumbered, and he had but the equity of redemption. Being thus situated, on the 6th day of January, 1853, Jones borrowed $2322 82 from Gholson, gave Hogan and Hardy as sureties, and conveyed his whole estate, real and personal, to Walton as trustee, providing for a sale of the land and negroes, the payment of the money thus borrowed, and the rest and residue to be paid to Jones, the insolvent grantor.

By this transaction, Jones as effectually defrauds his creditors and puts the money in his pocket as if he had run the property from the State. If a debtor borrows money, conveys his whole estate to indemnify his sureties, provides for its sale and for the payment of the residue to him, reserving the use of the plantation and slaves until the sale, he thereby defrauds the creditors of the entire amount. He does not devote a part of it to one creditor and reserve the residue to himself. He does not prefer creditors of a class, but he appropriates the entire estate to himself.

It is a clear and palpable violation of the sound, salutary rule laid down by the learned judge in the case of *Trimble* v. *Turner*,

13 S. & M. 348. " The law requires every man to devote the whole of his property fairly to the payment of his debts, with some trivial exceptions. It will not tolerate any subterfuge or device. which diverts it from that purpose. The form of the transaction or contract gives it no validity where good faith, which is necessary to all transactions, is absent."

It will be steadily borne in mind that this is a general assignment of all the debtor's property, and not the transfer of a small portion to secure an existing debt. All the cases, therefore, upholding a mortgage or deed of trust on a part of the debtor's property have no application.

In *Mackie* v. *Cairns*, the deed conveyed all the debtor's property to secure certain creditors, and only reserved $2000 per annum to support the debtor's family until the sale day. Chief Justice Savage, in pronouncing the deed void for this provision, said : " Suppose a debtor in failing circumstances conveyed the whole of his property to trustees for his own benefit, could it be questioned that it would be void ? When a debtor fails from folly or misfortune, the whole of his property belongs to his creditors, and any act which appropriates the property to his own use is fraudulent and void." *Mackie* v. *Cairns*, 5 Cowen, 580.

The facts in the case of *Grover* v. *Wakeman*, 11 Wendall, 188, 202, 203, are that the failing debtors conveyed all their property to assignees, to sell and pay certain preferred creditors, and to pay the residue to the assignors, if any. The court say it is time to lay down a rule on the subject. The assignment of the embarrassed debtor must be absolute and unconditional for the benefit of his creditors, and must contain no reservations for the benefit of the grantor, and the deed was declared fraudulent.

Goodrich conveyed nearly all his property in trust to sell the same, pay his debts, and the residue, if any, to be paid to the grantor. No provision was made for one of his creditors, Diggert. Chief Justice Thomson, in declaring this instrument fraudulent, says, it is a plain case of an attempt by an insolvent debtor to put his property beyond the reach of legal process, and at the same time to secure a portion for his own benefit. It is a palpable fraud. It is a conveyance on certain trusts, one of which is for his own benefit. This illegal provision vitiates the whole. It appears on the

face of the instrument, and no proof of extrinsic facts can obviate the difficulty. It makes no difference that there is no surplus left for the debtor. *Goodrich* v. *Downs*, 6 Hill, 438, 440.

One clause of the New York Statute of Frauds is exactly like our own; while another, in reference to trusts, differs slightly, though not materially, from ours. This deed was declared void under both branches of the statute.

Jackson conveyed all his estate in trust to sell and pay a number of his creditors; and after paying the enumerated debts, to reconvey the residue, if any, to the grantor. The court, in deciding on the validity of this deed, say we need go no further than this provision. It renders the instrument void on its face. The debtor can reserve nothing to himself until all his creditors are paid. *Barney* v. *Griffin*, 2 Comstock, 365, 370; see also *Boardman* v. *Halliday*, 10 Paige, 229, 230.

The very question under consideration came before the Supreme Court of Alabama in a late case, and after full argument, was decided in accordance with the opinions before cited.

William Montgomery made a deed of trust of all his property to a trustee, upon the following stipulations: 1. To sell the property at public sale, at the court-house door, if the debts remained unpaid four months after the date of the deed. 2. To appropriate the proceeds of the sale to the payment of the debts *pro rata*. 3. The surplus of the sale, if any, to be paid to the grantors. 4. The use of the land and negroes to remain with the grantor until the law day of the deed. The court decide, "That we do not hesitate to say that a deed made by an insolvent of all his property to a trustee, in trust for the payment of some of his debts, leaving other debts unprovided for, retaining the use of the property, and reserving the surplus of the sale, is fraudulent and void. It is not permissible for one thus to avail himself of part of his indebtedness, to tie up all his property, and exempt it from liability for his other debts, while he has the temporary use and benefit of it, and a contingent residuum. That all the facts do not appear on the face of the deed, only imposes on the party upon whom the burden of proof rests, the necessity of otherwise establishing their existence."

It will thus be seen that the court rests its decision on the provisions of the deed reserving the temporary use of the property

and the residuum to the grantor. The only outside facts to be proved were, that the grantor was in failing circumstances, and conveyed all his property, securing only a part of his debts. *Montgomery's Executors* v. *Kirksey*, 26 Ala. 172, 184, 188. See also, *Gazzam* v. *Payntz*, 4 Ala. 382; *Hindman* v. *Dill*, 11 Ib. 689; 7 Ib. 770; 6 Ib. 178; 12 Ib. 102; 5 Ib. 324; 10 Ib. 731.

The deed declared void on its face, in the case of *Henderson* v. *Downing*, 24 Miss. R. 24 only provided that the expenses of the families of the grantors should be paid, and the creditors paid in five annual instalments. The deed from Jones to Walton is far more objectionable. It does not give the crops to the creditors, but reserves the entire use of the land and thirteen slaves to the grantor. It does not make it obligatory on the trustee, to sell at maturity of the note to Gholson, but on the request of the sureties, Hogan and Hardy. Then, out of the proceeds of the land and slaves, Jones could pay $200 per annum to the lender, the sureties being indemnified, would not call for a sale, and thus the property might be tied up a quarter of a century. The principles and rules laid down by this court in the *Farmers' Bank of Virginia* v. *Douglass*, are fatal to the validity of this deed. 11 Smedes & Marshall, 469.

Any provision in a deed of trust which materially hinders and delays a creditor in the assertion of his rights, especially when coupled with a reservation of any part of the property to the grantor, makes the whole deed void. 24 Miss. R. 117; 4 Sm. & Marshall, 229.

The complainants had their judgments on the 8th of October, 1852, and their executions in the hands of the sheriff. On the return of *nulla bona*, or without it, they could have gone into equity, and paid off the $3000, secured by Exhibits 1 and 2. But to prevent this, the debtor borrows money, conveys away the equity of redemption, and provides that it shall not be sold while his sureties will stand for him. *Burke* v. *Murphy*, 27 Miss. 167.

The precise point involved came before this court in a late case. *Hunt* v. *Knox et al.* 34 Miss. R. 678. Ambrose Knox conveyed to A. Knox certain slaves, to secure a debt of $6377 84, and to indemnify a surety for $4720, in trust, to take possession of the property, and if the debts were not paid at maturity, to sell the property, pay the debts, and pay over the surplus to the grantor.

The court say: "Besides the other proofs of fraud, and independent of them, the reservation of the surplus for his own use, rendered this deed void." Ib. 680, 681. See also *Stanton* v. *Green*, 34 Miss. 577.

4. Although judgments cannot operate as liens on mere equities, yet courts of equity will regard and treat them as liens on equities, and enforce them accordingly by placing the judgment-creditor in the place of the judgment-debtor. *Roach* v. *Bennett*, 24 Miss. 103.

The judgments are both older than the deed of trust. A court of equity will remove clouds upon the title to property, and remove obstructions to a fair sale. *Fowler* v. *McCartney*, 27 Miss. 509; *Snodgrass* v. *Andrews*, 1 George, 489–90. The defendants are liable for the rents and profits, hire, &c. *Whitney* v. *Freedland*, 26 Miss. 481; *Lawrance* v. *Hand*, 23 Ib. 103.

5. This answer of Hogan sets up as new matter, and by way of avoidance, that complainants were present and released their liens, but no proof is taken, and it stands for nought. The judgments of complainants and Exhibits 1 and 2, recorded and enrolled, were full notice to the world of the facts. But a fraudulent conveyance to hinder and delay creditors, is void, whether the beneficiaries participated in the fraud or not. This question is fully discussed in the cases before cited on the subject of fraud. But the sale of Walton to the defendants on credit, in violation of the plain provisions of the deed of trust, was absolutely void, and conferred no title on the defendants. The deed, on its face, requires the trustee to sell for cash. Story's Agency, § 78. If sold on credit, the owner may recover it back. Ib. §§ 226, 229.

A trustee must follow the terms of the instrument appointing him, literally and faithfully. Story's Equity, § 1276; *Greenleaf* v. *Queen*, 1 Peters, 138.

HARRIS, J., delivered the opinion of the court.

This bill is filed by the complainants to subject certain equitable estate of a defendant in execution to the equitable liens of the judgments they claim to represent.

The property sought to be subjected is in the hands of the respondents, and claimed by them under a sale by virtue of a trust-deed made to secure a *bona fide* loan of money.

The bill seeks to set aside the deed as "fraudulent on its face," and to subject the equitable estate to the lien of these judgments.

Two insuperable objections to the relief here sought appear on the face of these proceedings. In the first place there is no allegation of *fraud in fact* contained in the bill, and no allegation that the deeds in question *were made with the intent* to delay, hinder, or defraud the creditors of the grantor, but an allegation that the deed "is void on its face, and fraudulent as to creditors." Without this *direct* allegation of the *intent* to hinder, delay, or defraud creditors, the facts apparent "*on the face of the bill*" would not be competent as evidence to establish the unlawful intent. The complainant must be held to the issue made by the allegations of the bill and the answer thereto.

But, again, the respondents to this bill are *bona fide* holders of the possession of the property sought to be subjected long anterior to any *lien* which complainants set up. The judgments of complainants never were a lien on the *equity* here sought to be subjected to their payment, and the securities of Jones having acquired the legal title, with an equal equity in their favor, a court of equity will not disturb that title or equity, but permit the legal title to prevail.

Let the decree be reversed, and bill dismissed at complainants' costs.

The same order is made in No. 8784, *Hogan* v. *Garner, Neville & Co.*, depending on the same principles, and submitted with this case.