## Case No. 8,234.

In re LELAND et al.

[10 Blatchf. 503.] [1]

Circuit Court, S. D. New York. March 3, 1873.

BANKRUPTCY—CHATTEL MORTGAGE—NOT RECORDED AT DEBTOR'S RESIDENCE—VENDOR'S LIEN IN BANKRUPT COURT.

1. N. sold to L., and delivered into his possession, certain chattels, taking therefor the note of L., payable one day after date, without grace, and a mortgage on the chattels, to secure the note, and renewals of it, endorsed on it. Four notes, as one renewal of it, made three days after its date, were endorsed on it, the latest of which became due in six months. The mortgage was not renewed, within twelve months, under the law of New York, by filing it in the town where L. resided. Afterwards, L. was adjudged a bankrupt. The chattels were never taken back into the possession of N., and passed into the hands of the assignee. N. claimed their proceeds, the notes not having been paid: Held, that N. had no lien as vendor, apart from the mortgage lien, because he had parted with the possession of the chattels, and the sale was not on an agreement that the title should not pass, or that the delivery of possession should be other than absolute.

[Cited in Hutchinson v. First Nat. Bank, 133 Ind. 280, 30 N. E. 952.]

2. The mortgage, because not so filed, was void as against creditors, and as against the assignee in bankruptcy, representing them.

[Distinguished in Field v. Baker, Case No. 4,762. Cited in Platt v. Stewart, Case No. 11,220.]

3. So long as N. did not take possession of the chattels, the statute as to filing the mortgage operated, although the first note was not paid at maturity, and the other notes were not given until two days afterwards.

4. Although the title of the mortgagee of the chattels becomes absolute as between him and the mortgagor, by forfeiture, on default of payment of the mortgage debt, it is, nevertheless, necessary to file the mortgage, if the possession of the mortgagor is suffered to continue.

5. The assignee in bankruptcy represents all the creditors; and, whatever right they might assert as creditors, if they had obtained judgments, he may, for their benefit, assert, whether it be to set aside conveyances by the bankrupt which are fraudulent and void as against creditors, or which are otherwise, as against them, invalid.

[Cited in Barker v. Barker's Assignee, Case No. 986; Re Werner, Id. 17,416; Miller v. Jones, Id. 9,575; Re Duncan, Id. 4,131; Platt v. Preston, Id. 11,219; Platt v. Mead, 9 Fed. 96; Platt v. Matthews. 10 Fed. 281; Olney v. Tanner. 18 Fed. 636; Jones v. Smith, 38 Fed. 381; Pearsall v. Smith, 149 U. S. 231, 13 Sup. Ct. 835.]

[Cited in Massey v. Gorton, 12 Minn. 145 (Gil. 83); Tabor v. Cilley, 53 Vt. 488; Edwards v. Entwisle, 2 D. C. 48.]

[In review of the action of the district court of the United States for the Southern district of New York.]

[A petition in bankruptcy was filed in the district court for the Western district of New York against Warren and Charles Leland, composing the firm of Leland Bros. At this time bankruptcy proceedings were pending in this district against these two and Simeon Leland, comprising the firm of Simeon Le-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

land & Co. The district court for the Western district dismissed the petition so that the matters might all be adjudicated together in this district. Case No. 8,228. Leland Bros. mortgaged their Saratoga Springs Hotel property to secure certain bonds made by them. These bonds are considered in Case No. 8,229. The case is now heard upon petition of John H. Platt.]

This was a petition by John H. Platt, assignee in bankruptcy of Simeon Leland and others, to review and reverse an order of the district court, directing such assignee to pay to Nicol & Davidson the proceeds of certain chattels found in the possession of two of the bankrupts, which the said Nicol & Davidson claimed under and by virtue of a chattel mortgage, and also by virtue of a lien for the unpaid price of the chattels, on a sale thereof to the bankrupts.

Thomas M. North, for assignee.
Amos G. Hull and Henry E. Davies, for Nicol & Davidson.

WOODRUFF, Circuit Judge. In the summer of 1870, and on or before the 17th of June, the claimants, Nicol & Davidson, sold to two of the bankrupts, Warren Leland and Charles Leland, then doing business and conducting a hotel at Saratoga Springs, under the firm name of Leland Brothers, certain chandeliers and gas fixtures, for use in the said hotel, and, on the said 17th of June, they received, for the price, or the chief portion of the price, the promissory note of the said Leland Brothers, for $4,537 75, dated June 17th, 1870, payable one day after date, without grace; and, at the same time, they also received, from the said purchasers, their mortgage, executed by each in his proper name, by which they mortgaged the same chattels, to secure the payment of the note, describing the sum secured as being the purchase money of the chattels. The condition of the mortgage is, that the mortgagors pay, on or before the 18th of June, 1870, the sum of $4,537 75, "according to the condition of a promissory note, bearing even date therewith, and according to the renewals of said note above described, endorsed on the back of said note," with a provision, that, until default, the mortgagors may remain in the possession of the said goods and chattels, and in the full and free enjoyment of the same. Upon the back of the said note appears the following endorsement: "This note is renewed, by the execution of four notes as follows, (three of which are also subject to be renewed,) and are each dated June 20th, 1870, one for $1,009 72, payable forty-five days; $1,012 13, sixty days; $1,300 18, four months; $1,315 51, six months. Nicol & Davidson." This mortgage was filed in the town of Saratoga Springs, and, before the expiration of twelve months, a copy thereof, with the statement specified in the statute of New York requiring the filing of chattel mortgages, was, also, there filed; but, it is admitted, as part of the proof in the case, that, although, during a portion of the summer, the mortgagors attended personally to the conduct and management of the hotel at Saratoga Springs, they, each of them, resided, with their respective families, in Westchester county, where each claimed to reside, paid taxes, and voted as a resident, visiting and remaining at Saratoga temporarily, for the conduct and superintendence of the hotel, between June and September.

It is claimed and insisted by the assignee, that such mortgage is void, under the statute of New York which declares, that mortgages of chattels are void, as against creditors, unless filed in the town in which the mortgagor resides. On the other hand, it is claimed and insisted by the mortgagees, 1st, that, irrespective of the question, whether the mortgage, as such, is valid, they have a valid lien upon the chattels in question, as vendors, for the unpaid purchase money; and, 2d, that, by the non-payment of the principal note, due one day after date, the title of the mortgagors was forfeited, and the title of Nicol & Davidson thereupon became absolute, and that, therefore, it is immaterial whether the mortgage was filed in the proper office, or not, and the title of the mortgagors is good.

I. There is, no doubt, a lien, in favor of the seller of personal property, for the price of the sale; and, notwithstanding a sale which is perfected so as to vest the title in the purchaser, the seller may retain the possession, in virtue of his lien, until the price is paid. If nothing be agreed between seller and purchaser, which operates as a waiver or modification of this lien and right of possession, the right of the seller is not unlike that of a pledgee of personal property. He has a lien accompanied by possession; but, possession is necessary to support the lien, and, if possession be surrendered, the lien is gone. In the case of the seller, there is an apparent, but only an apparent, modification of this rule, where the purchaser becomes insolvent after the sale, and although the seller has parted with the possession, while the goods are in course of transportation to the buyer, in which case the seller has the right of stoppage in transitu, by the exercise of which he may resume the actual possession of the goods. This right is sometimes called an extension of his lien for the price. But, if the goods are actually delivered to the buyer, or, being forwarded to him, actually reach him, so as to come to his possession, as buyer, the lien is gone. Non-payment of the price, in such case, does not entitle the seller to reclaim the goods, there being no fraud vitiating the sale itself. So that, the sellers, in the present case, had not, independent of any special agreement, any lien entitling them to claim or hold the goods as against the assignee in bankruptcy. They could not, unless by special agreement, have

reclaimed them from the bankrupts themselves.

It is, however, competent for buyer and seller to agree upon a conditional delivery, so that, although the title and possession pass to the buyer, the seller may, nevertheless, assert a lien, and reclaim the goods, if the price be not paid according to the terms of sale. Such an arrangement is, however, not to be confounded with a conditional sale. Where it is agreed that, though the price is fixed, the title shall remain in the seller, or shall not pass or vest in the buyer, unless and until the price is paid, according to the terms agreed upon, there the property remains in the seller, as against all the world, if such price be not paid. But, an actual sale in form and effect to pass the title, followed by a merely conditional delivery, is a totally different transaction; and whether, in such case, the seller can reclaim, will depend upon other considerations. As against the buyer, he undoubtedly may, if the price is not paid at the time agreed upon. But, the rights of creditors or of purchasers may intervene, to cut off such right of reclamation.

Without discussing every supposable case in which there is an absolute sale, but with a conditional delivery, for the purpose of preserving the lien of the seller, it must suffice to say, first, that in the present case, the sale by Nicol & Davidson was not a conditional sale. The title passed to the bankrupts. There was no agreement that it should not pass until the price was paid, and they are not entitled to claim the goods, or the proceeds thereof, on the ground that they never parted with the title. Second, seeking to establish their lien for the price, by virtue of a special agreement with the buyers, they must abide by the actual agreement made, and the instrument executed in conformity with that agreement. There is no proof of any other agreement, and, if the instrument expressing their agreement is not effectual, by reason of the failure of the buyers to do what is by law necessary for their protection, they fail to obtain any benefit therefrom. They received from the buyers a mortgage of the goods. That was what the buyers agreed to give them. The delivery of the goods was, in all other respects, absolute, and vested a perfect title in the buyers, only subject to such mortgage. The sellers cannot now fall back upon any other supposed or possible agreement, qualifying the delivery, and securing to them a lien for the price. Their whole right and interest depends upon the terms of the mortgage, its validity, and its effect.

II. Does the mortgage entitle them to reclaim the goods? Unquestionably, it does, as between them and the mortgagors, on default of payment according to the condition thereof. But, it not having been filed where the mortgagors resided, the statute of the state of New York declares it void as against cred-itors; and that statute is equally controlling in this court and in the courts of the state.

It is claimed that, because it is valid, without being properly filed, as against the bankrupts, it is, therefore, good as against their assignee in bankruptcy, and that no creditor but a judgment creditor can impeach or deny its validity. If it were material, it would be sufficient to say, that, in this case, it is proved, that there are judgment creditors, and that the assignee in bankruptcy is acting herein in their behalf, as well as in behalf of all others. But, the claim is erroneous, on a broader ground. The proceedings in bankruptcy arrest the ordinary proceedings of creditors to obtain judgments, and thereby to secure an appropriation of the debtor's property to their use, and the assignee in bankruptcy represents them. He is trustee for them; and, whatever right they might assert as creditors, if they had obtained judgments, he may, for their benefit, assert, whether it be to set aside conveyances by the bankrupts, which are fraudulent and void as against creditors, or which are otherwise, as against them, invalid.

It is next claimed, that, in this case, the title of the mortgagors was forfeited by the non-payment of the note due one day after its date; that, therefore, the title of Nicol & Davidson became absolute on the lapse of that day, so that, after the 18th of June, 1870, the title to the chattels was vested in them, and the subsequent possession of the mortgagors was as mere bailees of the mortgagees; and that, so, no title could pass to the assignee in bankruptcy. The general proposition, that, on breach of the condition of a chattel mortgage, the legal title of the mortgagee becomes absolute, as between the mortgagor and mortgagee, is incontrovertible. Numerous cases from the courts of this state are cited to that proposition. But, it is to be observed, that, in all of them, the mortgage itself is assumed to be valid as against creditors, and the questions were, whether any right remained in the mortgagor, after default of payment, which could be reached by execution or like procedure; and they by no means hold, that mere non-payment cuts off the equitable right to redeem the goods. It may be added, further, that, in the absence of any statute on the subject, it would, I think, be clear, that, after forfeiture, the title would be so fully vested in the mortgagee, that it could only be impeached on the ground upon which any sale or transfer of chattels by a debtor may be impeached, if the debtor is permitted to remain in possession thereof. After forfeiture, the mortgagee would be in no better condition than an assignee or purchaser who took no possession of the goods.

But, here, the statute is the test of the right of the mortgagee. That declares, that a mortgage, unaccompanied by a delivery and a continued change of possession, shall be void, as against creditors, unless the mortgage be filed as therein prescribed. Without

at present denying, that if, after forfeiture, the mortgagee takes possession of the goods, he may hold them against subsequent creditors, though the mortgage be not filed, I think it clear, that, while no such possession is taken, and the goods remain in the possession of the mortgagors, they are subject to the operation of this statute. The mortgagors have the possession, with a right to redeem by paying the debt—a right in equity only, but, nevertheless, a right which leaves the title still within the category contemplated by the statute. The provision of the statute requiring the filing of a copy of the mortgage within twelve months after it is first filed, together with a statement of the interest of the mortgagee under the same, plainly indicates this. It is intended by the statute, that, where a creditor claims title to chattels under or by virtue of a mortgage, but the possession, use and enjoyment are in the mortgagor, who is, by virtue of such possession and use, the apparent owner, creditors and others shall be informed, by the filing of a mortgage, and by the filing of a copy thereof from year to year, not merely that such chattels are subject to a mortgage, but shall be informed of the nature and extent of the interest therein claimed by the mortgagee. This construction of the statute is essential to its usefulness for the purpose for which it was enacted; for, otherwise, it could be rendered wholly useless, and its operation evaded, by making mortgages payable on demand, making an immediate demand, and thence onward suffering the goods to remain in the possession of the mortgagor, without filing the mortgage at all. The maxim, once a mortgage always a mortgage, must, under this statute, apply to the relations of the parties until the mortgagee takes possession. I apprehend, that mortgages payable on demand, and mortgages payable in one year, or at a less period, after date, have been very common in this state; and that it is the generally received construction of the statute, that, if the mortgagee desires to preserve his rights under the mortgage, he must refile it at the end of each year, notwithstanding it has become payable, and the mortgagor has paid nothing, or has paid a part only. It is in accordance with the views above expressed, that the opinion in Ely v. Carnley, 19 N. Y. 496, 499, in the court of appeals of this state, with the concurrence of all the judges, states: "When the title to the property has absolutely vested in the mortgagee, by failure to perform the condition, a refiling is necessary to preserve the title of the mortgagee, when there has been no change of possession. Once a mortgage, it so continues for the purpose of filing, until the rights of the parties have been changed by some new act or contract in relation to the property." The court of common pleas held the same, in Gould v. Bowne, 4 N. Y. Leg. Obs. 423. On this ground, therefore, I am constrained to hold, that the mortgage was invalid, as against the assignee.

III. It was earnestly insisted, on the argument herein, that it was error to hold that the title of the mortgagors was forfeited at law by the non-payment of the note of June 17th, 1870, payable one day after date, because the mortgage itself contemplated the renewals a memorandum of which was endorsed on the note, and showed, in and by the terms of the mortgage itself, that there was, and could be, no forfeiture, by breach of the condition, until the renewal notes or one of them became due. For this reason, it was insisted, that the title of Nicol & Davidson was that of mortgagees before forfeiture, and was most clearly within the statute, and void.

Taking the whole language of the mortgage into view, I am decidedly of opinion, that there was no forfeiture on the expiration of the one day after the date of the principal note. The very instrument which provides for the forfeiture recognizes, in terms, the right of renewal, and the endorsement on the note shows the fact of renewal. There was, therefore, no breach while the mortgagors exercised the right which the mortgage itself recognized. Nicol & Davidson could not, as between them and the mortgagors, have insisted on taking possession of the property, unless and until the mortgagors made default in the payment of one of the renewal notes; and, until then, there was no forfeiture at law. The necessity of filing the mortgage, to preserve the lien, was, therefore, unquestionable. But, I do not find in the papers submitted to me anything to show that this distinction is material in this case. None of the papers inform me when the petition was filed upon which the mortgagors were adjudged bankrupt. If that was after the renewal notes, or one of them, became due, then the condition of the mortgage was broken, and it is wholly immaterial whether forfeiture be deemed to result from that, or from the non-payment of the principal note, which by its terms, was payable one day after date. The foregoing conclusions apply to either. If the petition was filed, and possession was taken by the assignee, before the renewal notes, or either of them, became due, then the case is clearly within the statute, and the mortgagees are in the ordinary condition of a mortgagee of chattels whose mortgage is not filed as the statute requires.

The case is, apparently, a hard one. Both mortgagors and mortgagees appear to have acted in good faith. But, if mortgagees do not file their mortgages as the statute requires, the court cannot relieve them when the statute declares their mortgage void. The order must be modified, so as to exclude them from taking the property as mortgagees, and leave them to prove their debt as general creditors, but without costs.

[NOTE. For a construction of the real-estate mortgages, see Case No. 8,230, and the re-examination of the same debts, Case No. 8,231. The bankrupts' discharge, in Case No. 8,232. The right of certain creditors to prove their

claims, in Case No. 8.232. The action of the assignee in bringing suits against certain fraudulently preferred creditors is sustained in Case No. 11,220. The right of the district court to expunge the claim of fraudulently preferred creditors is considered upon appeal by the circuit court in Case No. 8,235.]