Hutchinson, Assignee, *v.* The First National Bank of Michigan City.

Judgment affirmed.

Filed December 22, 1892.

———◆———

No. 16,358.

HUTCHINSON, ASSIGNEE, *v.* THE FIRST NATIONAL BANK OF MICHIGAN CITY.

MORTGAGE.— *Withholding from Record.*—*Agreement to Keep Secret.*—*Effect of on Mortgage.* —*Assignment of Mortgaged Premises for Benefit of Creditors.*— *Right of Mortgagee.*—*Foreclosure of Mortgage.*—*Assignee's Answer.*—*Necessary Allegations.* —*Subsequent Creditors.* — *Fraud.* — In an action brought by A. against B., a certain corporation, and B.'s assignee, to foreclose a mortgage, and to have a receiver of the mortgaged premises appointed without notice, the defendant assignee answered, in substance, that said mortgage was made to secure a pre-existing debt; that it was agreed between the mortgagor and mortgagee that said mortgage should not be recorded or made public, in order that the credit of the mortgagor might be sustained, and that said mortgagor might be able to refund its then existing indebtedness, and make purchases on credit; and that in pursuance of said agreement and understanding, A. did refrain from recording said mortgage, and did withhold it from the public until after B. had made an assignment for the benefit of its creditors; that in the meantime, because of said mortgage being withheld from the public, B. had made purchases upon credit to which it was not entitled, and which were made possible only by such secret holding of said mortgage, and, for these reasons, has no priority over other creditors of the defendant corporation, who have been induced to give it credit solely by the said conduct of A. and B., and asking that the receiver appointed without notice be discharged, the assignee averring that he had taken and would take all necessary steps to protect the rights of creditors.    To each paragraph of the answer a separate demurrer was addressed and sustained, and proper exceptions were reserved to such ruling, and the defendant elected to abide by his answers, and prosecuted this appeal.

Hutchinson, Assignee, *v.* The First National Bank of Michigan City,

*Held,* that if there is any creditor of the defendant corporation, who, if the assignment had not been made, would have had a standing in court to question such incumbrance or conveyance, such assignee may, as the representative of that creditor, assail such conveyance, and that the distribution of the proceeds is a matter between the assignee and the creditors he represents, to be determined by the court.

*Held,* also, that creditors who had not altered their condition after the execution of said mortgage, do not occupy a position to successfully complain of its execution, or of the failure of A. to have the mortgage recorded in the time required by law.

*Held,* also, that in the absence of express fraud, the mere failure of A. to record said mortgage within the time fixed by law, will not, as against the creditors of the mortgagor, either prior or subsequent, render it invalid.

*Held,* also, that in an action brought by or for the benefit of subsequent creditors to avoid an instrument executed to defraud subsequent and existing creditors, the complaint should aver that the instrument was made with intent to defraud such creditors; for, in this State, fraud is a question of fact.

*Held,* also, that an arrangement for the withholding of a mortgage from record is not of itself sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent; but such fact, as a badge of fraud, is competent to be considered in determining whether or not there was, in fact, a fraudulent intent.

From the La Porte Circuit Court.

*H. B. Tuthill, H. A. Schwager, J. S. Duncan* and *C. W. Smith,* for appellant.

*J. H. Orr, M. Nye* and *J. H. Bradley,* for appellee.

MILLER, J.—The appellee brought this action against the Hopper Lumber and Manufacturing Company and William B. Hutchinson, its assignee, to foreclose a mortgage executed by the company prior to its assignment.

In addition to the foreclosure, the complaint charged that there was situate upon the mortgaged premises certain buildings and machinery used in the business of the company, which one James S. Hopper had advertised for sale under a pretended chattel mortgage held by the Sutton Manufacturing Company of Detroit, Michigan; that the

assignee of the Hopper Lumber and Manufacturing Company permitted said Hopper to take possession of the property, and will allow him to dispose of it; that the mortgaged property, including the machinery, is of less value, by six thousand dollars, than the amount due the plaintiff; that unless a receiver is appointed without notice, the mortgaged machinery, or part of it, will be removed and the plaintiff's security will be materially impaired.

In accordance with this prayer, a receiver was appointed.

No question is made as to the regularity of the proceedings in making the appointment of the receiver.

This suit was commenced, and the receiver appointed, on the 11th day of August, 1891, in vacation.

On the 10th day of September an answer, in two paragraphs, was filed, which are as follows:

"*Paragraph 1.* The defendant, William B. Hutchinson, assignee of the Hopper Lumber and Manufacturing Company, for a partial answer to so much of the complaint herein as prays for the foreclosure of the mortgage in the complaint mentioned and described, says that he admits, that on the 6th day of January, 1891, the defendant, the Hopper Lumber and Manufacturing Company, executed to the plaintiff the several notes and the mortgage in the complaint mentioned and described, and therewith exhibited. But he says that the plaintiff is not entitled to the decree of this court for the foreclosure of said mortgage, and ordering the sale of said real estate to pay the notes aforesaid, for the reasons following, that is to say : that said notes were executed to secure a pre-existing indebtedness; that at the time of the execution of said notes and mortgage, the defendant, the Hopper Lumber and Manufacturing Company, was engaged, and expected to continue in the business of buying and selling lumber, and the manufacture and sale of certain refrigerators, and the manufacture and sale of certain furniture specialties, and that said

corporation was then in good credit; that said corporation was then indebted in large amounts to persons other than the plaintiff herein, to wit, in the sum of more than seventy-five thousand dollars, which indebtedness would mature at various dates within ninety days next succeeding the 6th day of January, 1891, which indebtedness said Hopper Lumber and Manufacturing Company expected and intended to continue by renewals and extensions thereof by its creditors; and such renewals and extensions were necessary in order for it to continue in business; that said Hopper Lumber and Manufacturing Company, at said date, also expected and intended to purchase very large amounts of lumber and other material necessary for its use in the prosecution of its said business; all of which facts were at the time fully known to the plaintiff herein; that at said time it was also well known, both to the plaintiff and said Lumber and Manufacturing Company, that if said Hopper Lumber and Manufacturing Company should execute to the plaintiff the mortgage in the complaint mentioned and described, the credit of said Hopper Lumber and Manufacturing Company would be utterly destroyed, and it would be wholly unable either to procure renewals, or extension, of its then existing indebtedness, or to purchase lumber, or other material, needed by it in the prosecution of said business upon credit; that said corporation defendant, being so indebted to the plaintiff, the latter demanded from it the execution of the mortgage in the complaint mentioned and described, and therewith exhibited, to secure said indebtedness; that upon such demand being so made, the defendant corporation called the attention of the plaintiff to the foregoing facts, and to its intention to renew its then existing indebtedness, and to purchase lumber and other material upon credit, and that it was necessary for it to be able so to do, and said defendant corporation wholly refused to execute said mortgage to the plaintiff except upon the condition that the fact of the execution

of such mortgage and its existence should be concealed from the public, and that the same should not be recorded, to the end that it might continue in good credit, and be enabled thereby to renew said indebtedness, and to make such purchases upon credit; that said plaintiff, with a full knowledge of all of the foregoing facts, and that knowledge of the execution of said mortgage would destroy the credit of said defendant corporation, and render it impossible to renew such debts, and make such purchases; and well knowing that certain agencies, well known in the mercantile and business world as mercantile agencies, exist, whose business it is to keep constant watch over the credit of all persons engaged in business, and particularly to keep close watch over the records of mortgages, and at once, if on the record of mortgages, to publish such fact to all persons engaged in business; and well knowing that if such mortgage should be put upon record, the fact would be published to the persons to whom said defendant corporation was indebted, and from whom it expected to purchase such lumber and other material; and well knowing that thereby said defendant corporation would be precluded from renewing said indebtedness then existing, as well, also, as from making such purchases of lumber and other material upon credit; and well knowing that if the existence of such mortgage, and the fact of its execution were concealed, and it withheld from record, said corporation would be able to make such renewals, and such purchases, and would in point of fact do so; and calculating and intending to enable it to do so, and to maintain its credit, said plaintiff did agree with said corporation defendant that it would conceal the fact of the execution of said mortgage and its existence, and would withhold the same from record; and thereupon, upon said agreement and condition, said defendant corporation did execute said mortgage in the complaint mentioned and described and therewith exhibited; and said plaintiff did, in accordance

with its said agreement, withhold said mortgage from record, and did conceal its existence.

"And said defendant further says that said defendant thereafter, proceeding according to its said intentions as hereinbefore set out, and as it was intended by the plaintiff that it should, did proceed to renew its then existing indebtedness, the creditors holding the same consenting to do so in ignorance of the existence of said mortgage, when they would not have done so had they known of its existence; of which debts so renewed there now exists unpaid the sum of more than twenty-five thousand dollars, and more than the full value of said mortgaged property; and said corporation defendant further proceeded according to its said intention, and, as was intended by plaintiff it should, to purchase large amounts of lumber and other material needed by it on credit, the sellers thereof relying upon the credit had by said defendant, and ignorant of the existence of said mortgage, when they would not have sold said lumber and other material to said defendant corporation had they known of the existence of said mortgage; that of said indebtedness for such lumber and material so purchased there now remains unpaid the sum of twenty-five thousand dollars.

"And the defendant further shows that thereafter, to wit, on the 25th day of July, 1891, said defendant, being insolvent and unable to pay its debts, and owing the various sums above set forth, did, under the provisions of the statute of the State of Indiana in such cases made and provided, execute to this defendant its indenture of assignment of all of its property for the benefit of all of its *bona fide* creditors, which indenture of assignment was duly recorded in the recorder's office of Laporte county, on the said 25th day of July, and delivered all of said property, including that in the said mortgage mentioned and described to this defendant, and that this defendant accepted said trust, and within fifteen days thereafter filed with the

clerk of the Circuit Court of Laporte county his affidavit that said property had actually been delivered to him for the purposes declared in said indenture, and as to the probable value thereof, and did execute and file with said clerk his written undertaking in double the amount of the value of said property, with surety to the acceptance and approval of said clerk, conditioned that he would faithfully execute the duties of his trust, and did also file with said clerk an oath duly subscribed by him that he would faithfully execute the duties of his trust, and thereupon he entered upon the execution of said duties, and thenceforward, hitherto, until now, he had been, and yet continues in the execution thereof; and that thereafter on the 27th of July, 1891, the plaintiff caused said mortgage to be recorded in the recorder's office of Laporte county; that the total value of the assets of said Hopper Lumber and Manufacturing Company included in said indenture of said assignment, and so coming into his possession, will not exceed the sum of sixty thousand dollars; that the *bona fide* indebtedness of said corporation will exceed the sum of one hundred and five thousand dollars; that by the means aforesaid, and in the manner aforesaid, the plaintiff gave and intended to give the said Hopper Lumber and Manufacturing Company a credit to which it was not entitled, and to which plaintiff well knew it was not entitled; and the plaintiff well knew and intended that its conduct would result, as it did result, in the then existing creditors making such renewals, and in many persons selling said Hopper Lumber and Manufacturing Company goods upon credit.

"Wherefore, this defendant says that the plaintiff can not now take advantage of its own wrongful conduct, and claim that it has any priority over the other creditors of said defendant corporation, who by such conduct it has induced to renew such indebtedness, and to make such sales to said defendant corporation. He, therefore, prays the

judgment of this court that the plaintiff is not entitled to a foreclosure of said mortgage.

"*Paragraph 2.*   And for a partial answer to so much of said complaint as asked for the appointment of a receiver herein, the defendant, William B. Hutchinson, assignee of the Hopper Lumber and Manufacturing Company, says that he admits the execution of the mortgage to the plaintiff, set out and exhibited with the complaint; and that James S. Hopper, president of said Hopper Lumber and Manufacturing Company, pretended to execute what purported to be a chattel mortgage to the Sutton Manufacturing Company, upon a large amount of personal property belonging to said defendant corporation, including the machinery in said complaint mentioned and described; and that said Sutton Manufacturing Company gave notice that it intended to sell said personal property under said pretended chattel mortgage; but he denies that he has ever permitted or intended to permit said Sutton Manufacturing Company, or any person acting in its behalf, to take possession of any of the property claimed by the plaintiff under its mortgage, or that he ever intended to permit said Sutton Manufacturing Company, or any person acting in its behalf, to sell or dispose of said property; but, on the contrary, he avers the fact to be, that before the application of the plaintiff for the appointment of the receiver herein, he had refused to permit said Sutton Manufacturing Company to take possession of any portion of the property under said chattel mortgage, which fact would have been made known to the plaintiff upon inquiry.

"And this defendant further shows that as such assignee he has filed his certain suit in equity in the United States Circuit Court for the District of Indiana against said Sutton Manufacturing Company to have said pretended chattel mortgage decreed null and void, and has procured from said court a restraining order enjoining and restraining said Sutton Manufacturing Company from proceeding

with said proposed sale; that, at all times since his accep-
tance of said trust, he has retained possession and control
of all of the property of every nature and description which
has come into his hands as such trustee under such assign-
ment, and he intends to continue to retain the possession
thereof, and the same to dispose of and administer for the
benefit of all of the *bona fide* creditors of said Hopper
Lumber and Manufacturing Company according to their
several and respective rights therein, as they may be de-
creed and determined by the proper courts having juris-
diction thereof, and at all times subject to the direction of
this honorable court in the premises.

" Wherefore, he says that there was no just ground for the
application to this court for the appointment of a receiver
herein; and such receiver having been appointed without
notice to him, or opportunity afforded to him to make any
showing why such receiver should not be appointed, said
receiver ought now to be discharged, and all costs made
upon said application, and growing out of said appoint-
ment, ought to be taxed against the plaintiff, and he prays
the judgment of this court accordingly."

A demurrer was filed to each of these paragraphs of
answer, and was sustained by the court. To these rulings
the appellant at the time excepted, and elected to abide by
his answers, and thereupon judgment was rendered in fa-
vor of appellee against the Hopper Lumber and Manufac-
turing Company for the full amount of the mortgage
indebtedness, and there was a decree of foreclosure and
order of sale of the mortgaged realty for the payment of
the judgment.

The only errors assigned in this court are, that the court
below erred in each of its rulings in sustaining demurrers
to the answers.

So that the only question to be considered by this court
is as to the sufficiency of each of the partial answers, for

the purposes and to the extent to which they were respectively pleaded.

The mortgaged premises having been conveyed by the mortgagor to the appellant Hutchinson, in trust for the benefit of its creditors, he was a necessary party defendant in the suit to foreclose the mortgage. The legal title to the mortgaged premises rested in him, and it became his duty, on behalf of the creditors, to protect their rights in the foreclosure suit. He was made a defendant in the action in order that he might defend. An assignee may not only defend actions to foreclose mortgages which he deems fraudulent, but, ordinarily, is the only one who can institute actions to set aside mortgages or conveyances executed by the assignor, prior to the assignment, for fraud. *Voorhees* v. *Carpenter*, 127 Ind. 300; *Cooper* v. *Perdue*, 114 Ind. 207; *Seibert* v. *Milligan*, 110 Ind. 106; *Wright* v. *Mack*, 95 Ind. 332; *Lockwood* v. *Slevin*, 26 Ind. 124; *Barker* v. *Barker's Assignee*, 2 Wood C. C. 87; *In re Leland*, 10 Blatchf. 503; *Hildeburn* v. *Brown*, 17 B. Mon. (Ky.) 779.

The fact that the rights of the creditors, among themselves, to the property or fund sought to be protected or recovered are not the same, is not a matter that concerns the adverse party. If the assignee represents any creditor who, if the assignment had not been made, would have had a standing in court to question the conveyance, such assignee may, as the representative of that creditor, assail such conveyance. The distribution of the proceeds recovered in such action is a matter between the assignee and the creditors he represents, to be determined by the court having jurisdiction of the trust according to the rules of equity.

It follows, that if any of the several classes of creditors mentioned in the first paragraph of answer could, if the assignment had not been executed, have successfully defended the action on account of the matter pleaded in the answer, then the demurrer should have been overruled,

although such assignee may represent other creditors who would have been unable to make such defense.

We are satisfied that the creditors who did not alter their condition, after the execution of the mortgage sought to be foreclosed, do not occupy such a position as to enable them to successfully complain of its execution, or of the failure of the bank to record it within the time allowed by law. It remains to determine whether the creditors who gave credit upon new purchases, or renewed obligations, since the execution of the mortgage, occupy a more advantageous position.

The section of the statute regulating the recording of deeds and mortgages of real estate reads as follows:

Section 2931, R. S. 1881. "Every conveyance or mortgage of lands, or of any interest therein, and every lease for more than three years, shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance or lease, not so recorded in forty-five days from the execution thereof, shall be fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration." *Kirkpatrick* v. *Caldwell's Adm'rs*, 32 Ind. 299.

None of the creditors whose claims are represented by the assignee are either "subsequent purchasers, lessees or mortgagees," and are, therefore, not within the classes against whom the instrument is, by statute, declared to be fraudulent and void. *Runyan* v. *McClellan*, 24 Ind. 165; *Kirkpatrick* v. *Caldwell's Adm'rs, supra; Shirk* v. *Thomas*, 121 Ind. 147; *Mann* v. *State, ex rel.*, 116 Ind. 383; *Evans* v. *Pence*, 78 Ind. 439.

We can not extend the terms of the statute so as to include general creditors in the classes of persons, against whom unrecorded mortgages are to be deemed, as an inference of law, fraudulent and void, for that would be legislation.

It may be, and doubtless is, the policy of the law to en-

courage the prompt recording of instruments affecting the title of real estate, and to discourage their withholding from record. The Legislature has stated the consequences which result, as a matter of law, from the failure to so record them, and we can only ascertain and enforce its mandates.

It follows, that in the absence of express fraud, the mere failure of the appellee to record the mortgage in suit within the time fixed in the recording act will not, as against the creditors of the mortgagor, either prior or subsequent, render it invalid.

We are, then, to determine whether the failure to record the mortgage will, when taken in connection with the agreement to withhold the same from record, and the other facts stated in the answer, make such a showing of fraud as to either invalidate the mortgage or postpone its lien to the claims of some of the creditors represented by the assignee.

In pursuing this investigation, the fact must constantly be kept in view, that, in this State, it is provided by statute that in deeds and mortgages claimed to have been executed in fraud of creditors, the question of fraudulent intent shall be deemed a question of fact. In construing this section of the statute this court, in *Cicero Township* v. *Picken*, 122 Ind. 260, said:

" In this State there is no such thing as constructive fraud; by statute the question of fraud is made a question of fact. Section 4924, R. S. 1881; *Rose* v. *Colter*, 76 Ind. 590; *Leasure* v. *Coburn*, 57 Ind. 274; *Bentley* v. *Dunkle*, 57 Ind. 374."

This may be, when applied to a state of facts not pertinent to this case, an overstatement of the law, but as a general statement it is correct. In *Phelps* v. *Smith*, 116 Ind. 387, it was said:

" By our statute the question of fraud is made one of fact, and where fraud is essential to the existence of a

cause of action it must be found as a fact, and not left to be inferred as a matter of law."

To the same effect we cite: *Farmers' Loan and Trust Co.* v. *Canada, etc., R. R. Co.,* 127 Ind. 250; *Fletcher* v. *Martin,* 126 Ind. 55; *Cicero Tp.* v. *Picken, supra; Kirkpatrick* v. *Reeves,* 121 Ind. 280; *Sickman* v. *Wilhelm,* 130 Ind. 480.

Not only must fraud be found as the ultimate fact, in order to avoid a conveyance as being fraudulently executed, but the complaint in such action must expressly charge that the instrument was executed with a fraudulent intent. *Plunkett* v. *Plunkett,* 114 Ind. 484; *Bentley* v. *Dunkle, supra.*

The section of our statute under consideration seems to have been copied from the statute of New York. In construing the section from which ours is copied, the court, in *Smith* v. *Long,* 9 Daly, 429 (436), said:

"Under the law of this State, fraud is a mixed question of law and fact, and in order to support a finding of fraud as a conclusion of law, in the findings of a court or referee, it is well settled that the existence of fraud must be *found* as a *fact.* Whatever is necessary to be found to sustain a conclusion of law must be alleged; consequently, to raise an issue of fraud under our code, fraud, as a *fact,* must be alleged." In the late case of *Threlkel* v. *Scott,* 89 Cal. 351, the court said:

"Nor will such fraudulent intent, which is itself a question of fact, be inferred from the facts stated in the complaint, either for that or any other purpose, for the further reason that a voluntary conveyance by an insolvent debtor is not necessarily fraudulent and void as to creditors. *Jamison* v. *King,* 50 Cal. 136; *McFadden* v. *Mitchell,* 54 Cal. 628; *Bull* v. *Bray, ante,* p. 286. Hence it follows that the fraudulent intent is a fact necessary to be alleged in the complaint."

This position is sustained by many cases, from which we

cite *Beardsley Scythe Co.* v. *Foster*, 36 N. Y. 561; *National Union Bank* v. *Reed*, 27 Abbott's New Cases, 5; same case on subsequent appeal, 12 N. Y. Sup. 920; *Martin* v. *Fox*, 40 Mo. App. 664.

In an action brought by, or for the benefit of, subsequent creditors, the complaint should aver that the instrument to be avoided was executed with intent to defraud subsequent as well as existing creditors. *Barrow* v. *Barrow*, 108 Ind. 345; *Stumph* v. *Bruner*, 89 Ind. 556; *Stevens* v. *Works*, 81 Ind. 445; *Lynch* v. *Raleigh*, 3 Ind. 273.

The paragraph of answer under consideration does not aver, or charge, that the mortgage was either executed, or kept off the record after its execution, with intent to defraud existing or subsequent creditors.

We have examined the cases cited by counsel of the appellants in their exhaustive brief, but are of the opinion that they are not in conflict with the views we have expressed.

In *Barker* v. *Barker's Assignee*, 2 Wood C. C. 87, the deed of conveyance was not executed with intent to defraud creditors, but having been kept from record for many years, it was held invalid as against an assignee in bankruptcy. The case went off on the ground that an unregistered act of alienation was, under the code of Louisiana, of no effect as against *bona fide* purchasers or creditors. The fact that the code of Louisiana includes creditors, among those as against whom an unrecorded instrument is to be deemed fraudulent and void, destroys the effect of this case as an authority in this State, where it would only be invalid as against subsequent purchasers, lessees, or mortgagees.

*In re Leland, supra*, a chattel mortgage was not filed in the county where the mortgagor resided, as required by statute, and was held invalid under the statute of New York, which declared that a mortgage of chattels should,

as against creditors, be void unless filed in the town in which the mortgagor resides.

In *Hildeburn* v. *Brown, supra,* an unrecorded mortgage was held invalid, because it had not been acknowledged, or legally proved and lodged for record, as required by a statute of Kentucky, in order to be valid as against purchasers or *creditors.*

In *Putnam* v. *Reynolds,* 44 Mich. 113, the court held that the statute made the chattel mortgage void against creditors for failure to have it recorded. The language of the statute, as set out in the opinion, is that such unrecorded mortgage should be "absolutely void as against the creditors of the mortgagor."

The case of *Hilliard* v. *Cagle,* 46 Miss. 309, tends to support the position assumed by the appellants. That was a case where the keeping of a trust deed from record was held, when aided by some evidence that the beneficiaries actively promoted the sale of goods to the grantor, after the execution of the deed, and before it was recorded, sufficient to avoid the deed as against creditors.

In *Blennerhassett* v. *Sherman,* 105 U. S. 100, the case came before the court on the evidence. The court held that keeping a mortgage from record in pursuance of an agreement made at the time of its execution, coupled with the fact that the mortgagee knowing that the mortgagor was insolvent, concealed the mortgage and misrepresented the financial condition of the mortgagor, was sufficient to avoid the mortgage.

In the case of the *Stock-Growers' Bank* v. *Newton,* 22 Pac. Rep. 444, the withholding of a mortgage from the record for a considerable time, in pursuance of an agreement not to record it, was held to be a badge of fraud, which, with some other evidence of concealment and misrepresentation, was sufficient to avoid the instrument.

In reading the foregoing cases and others cited by counsel for appellants, we have been impressed with the weight

and influence upon the minds of the various courts of the withholding of instruments from record in pursuance of agreements, or understandings to that effect, when considered as an element of fraud.

In none of the cases cited by counsel has the mere failure to record an instrument within the time fixed by statute, whether such failure was in pursuance of a previous contract, or by mere neglect, been held sufficient, of itself, to avoid such instrument. In each of the cases, the element of the known insolvency of the mortgagor, active misrepresentation of his financial condition, or other *indicia* of fraud entered into the transaction.

We are satisfied that an arrangement for the withholding of a mortgage from record is not of itself sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent; but that it is a badge of fraud to be considered with all the other facts and circumstances surrounding the transaction in determining whether or not there was, in fact, a fraudulent intent.

In *Folsom* v. *Clemence*, 111 Mass. 273, the court, in disposing of this question, said:

" The judge rightly ruled, also, that the arrangement or understanding in regard to withholding the mortgages from record, unless the mortgagors should have trouble, did not render them void, but was 'a matter entitled to consideration by the jury in passing upon the question' of fraud at the common law."

This case was cited with approval and followed in *Stewart* v. *Hopkins*, 30 Ohio St. 502 (530).

In standard works, concealment and failure to record instruments are classified and discussed in the chapters under the head of " Badges of Fraud " or "*Indicia* or Badges of Fraud." Bump on Fraud Conveyances, chapter 4; Waite on Fraudulent Conveyances, etc., chapter 16.

The answer under consideration states no facts from

which an inference of fraud can arise, other than the agreement relating to the keeping of the mortgage from record. It is not alleged that the mortgagor was at the time of the execution of the mortgage insolvent; or, if an inference of its insolvency arises from the facts averred, it is not charged that the mortgagee knew of such insolvency.

We are of the opinion that the court did not err in sustaining the demurrer to the first paragraph of answer.

The second paragraph of answer, which is addressed to so much of the complaint as asked for the appointment of a receiver, fully meets the allegations contained in the complaint relating to that subject. The question is before us on this appeal, notwithstanding the appellant might have appealed within ten days from the order making the appointment. R. S. 1881, section 1231. *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510 (528).

The judgment of the court sustaining the demurrer to the first paragraph of answer is affirmed; and, in sustaining the demurrer to the second paragraph of answer, is reversed.

Filed April 7, 1892; petition for a rehearing overruled December 21, 1892.