## In re COX.
## MUNCIE BANKING CO. v. RETHERFORD.
### No. 8084.

Circuit Court of Appeals, Seventh Circuit.

Feb. 2, 1943.

882

Walter D. White and George W. Pierce, both of Muncie, Ind., for appellant.

Francis A. Shaw, Ward Marshall, Ralph E. Rector, and Wm. H. Bales, all of Muncie, Ind., for appellee.

Before SPARKS, and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellant, doing business as the Muncie Banking Company, appeals from a judgment setting aside, at the suit of the trustee in bankruptcy of Thomas J. Cox, a mortgage upon 40 acres of land belonging to the bankrupt, executed January 4, 1941, recorded January 13, 1941, following adjudication of the bankrupt on January 9, 1941, as a preference, voidable under the Bankruptcy Act. The appeal raises one question, whether the evidence was sufficient to sustain the finding of the referee, approved by the court, that at the time of the execution of the mortgage, the mortgagee had reasonable cause to believe the bankrupt insolvent.

A creditor who obtains security for a previously unsecured indebtedness must surrender the same at the suit of the trustee, if procured within four months prior to bankruptcy, under such facts and circumstances as would cause a reasonably prudent man to believe the bankrupt insolvent when it was made. He may not close his eyes to known or obvious facts or to anything which he would ascertain by making the inquiry of a reasonably prudent business man. Grant v. First National Bank of Monmouth, 97 U.S. 80, 24 L.Ed. 971; Boston National Bank v. Early, 1 Cir., 17 F.2d 691; Canright v. General Finance Corp., 7 Cir., 123 F.2d 98, 99; Id., D.C.E.D.Ill., 35 F.Supp. 841.

At the time he took the mortgage, appellant knew that the bankrupt owned no real estate other than the 40 acres, appraised at $1600, and no personal property other than hogs, cows and farming equipment; that appellant had originally loaned the bankrupt $1100 on December 28, 1938, an additional $225 on May 31, 1939, and another $150 on June 22, 1939; that the various loans had been renewed from time to time without reduction of principal and for substantially reduced periods of time as events progressed toward the taking of the mortgage; that in December, 1940, the loans aggregated $1425; that the debtor had agreed to sell his hogs and reduce his debt; that he had failed to do so, making

no explanation of his failure other than to indicate that he had been disappointed. Another bank had inquired of appellant concerning the debtor's financial condition and credit standing, and the latter must have known that the financial statement submitted was not in the hand-writing of the debtor.

In this situation, appellant did not inquire of the bank which had requested information as to the debtor's credit as to whether that bank had made or contemplated making loans to the latter, and made no inquiry of other financial or credit agencies. He questioned in no wise the failure of the debtor to sign the financial statement. He made no inquiry of the debtor as to other debts owing by him. He did not examine the public records, where he would have found a chattel mortgage upon the debtor's personal property. Despite the fact that for over a period of some two years the debtor's debt had grown, appellant loaned an additional $175 and took a mortgage to secure the entire $1600, which was the full value of all real estate of the defendant, and, then, as his testimony shows, "by negligence," permitted the mortgage to remain unrecorded until four days after the petition in bankruptcy was filed. Appellant was aware that Brinson, father-in-law of the debtor, to whom the latter owed $3000, had formerly signed debtor's notes as security. Yet he made no inquiry as to whether Cox owed Brinson anything or whether he owed any current bills, in face of the fact that the debtor's explanation of his failure to produce money from his hogs was obviously lame and equivocal.

Under these and other facts, the referee believed the circumstances such as to put appellant upon inquiry which, if undertaken, would have revealed insolvency. He concluded that the mortgage was valid as to the presently advanced sum of $175 and void as to all other amounts. Upon review the court approved the order.

■ ■ As trier of the facts the referee observed the witnesses and determined the credibility to which each was entitled. He carefully analyzed the facts and circumstances. Our proper function is to determine whether he erred as a matter of law. The evidence is such that we are not justified in reversing the findings of fact.

Furthermore the Chandler Act, Section 60, sub. a, 11 U.S.C.A. § 96, sub. a, provides that the time when a transfer shall be deemed completed is the time when it becomes so perfected as to be valid against a bonafide purchaser from or a creditor of the bankrupt. This section does not make of the trustee a bonafide purchaser but it fixes a test as to the date at which the transfer is deemed to have been made, —viz., when it is perfect against a bonafide purchaser. The intent of Congress in this respect is clearly demonstrated in the language of the Congressional Committees: "The new test is more comprehensive and accords with the contemplated purpose of striking down secret liens. We provide that the transfer shall be deemed to have been made when it has become so far perfected that neither a bonafide purchaser nor creditor could thereafter have acquired rights superior to those of the transferee. As thus drafted, it includes a failure to record and any other ground which could be asserted by a bonafide purchaser or a creditor of the transferor, as against the transferee. We have also added a provision which makes the test effective even though the transfer may never have actually become perfected." Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 188; No. 1409 on H.R.8046, 75th Cong., 1st Sess. (1937) 30.

■ ■ Under this statutory test the transfer in question was made and became effective when it became valid against a bonafide creditor. Under the Indiana statutes, that was when it was recorded. Burn's Ind.Stat.Ann.1933 Sec. 56-119; Robeson v. Roberts, 20 Ind. 155, 83 Am. Dec. 308; Runyan v. McClellan, 24 Ind. 165; Sparks v. State Bank, 7 Blackf., Ind., 469; Doe, etc., v. Hurd, 7 Blackf., Ind., 510; Orth v. Jennings, 8 Blackf. 419; Pierce v. Spear, 94 Ind. 127; Hutchinson v. First National Bank, 133 Ind. 271, 30 N.E. 952, 36 Am.St.Rep. 537; Gratzinger v. Arehart, 209 Ind. 547, 198 N.E. 787; Dodds v. Winslow, 26 Ind.App. 652, 60 N. E. 458. As that event did not occur until after bankruptcy, the transfer, under the last sentence of Section 60, sub. a must be deemed completed "immediately before bankruptcy." At that time, which we think the same as "contemporaneously with bankruptcy," the transferee was charged with notice of insolvency, and hence should not retain the fruits of the favoritism of the bankrupt.

The judgment is affirmed.