Martin, Adm'r, v. Fox.

CHARLES MARTIN, Administrator of S. R. MARTIN, Deceased, Appellant, v. JAMES W. FOX *et al.*, Defendants; JAMES A. FARMER, Interpleader, Respondent.

St. Louis Court of Appeals, April 29, 1890.

1. **Practice, Appellate:** ASSIGNMENT OF ERROR. An assignment of error in general terms, which is applicable to a number of similar rulings of the trial court, and does not point out to which of these rulings it refers, is not properly made.

2. **Practice, Trial:** PLEADING: CLAIM FOR PROPERTY LEVIED UPON. When property levied upon under an execution is claimed by a third person, and an indemnifying bond is given by the execution plaintiff, which is returned to court, as provided by Revised Statutes, 1879, section 2367, and proceedings are then had in the circuit court, as provided by said section, the law contemplates that there shall be written pleadings, as in civil actions.

3. ——— : ——— : ———. An answer filed by the execution plaintiff, merely denying that the claimant "is in good faith the lawful owner of the whole property," so levied upon and claimed, is insufficient to raise the issue that a sale of the execution debtor to the claimant, under which the claimant derived title to the property, was fraudulent as to the creditors of the debtor.

Martin, Adm'r, v. Fox.

4. ———: ———: ———. If the execution plaintiff in such case seeks to hold the property on the ground that his judgment is for the purchase money thereof, and that the claimant is not a *bona fide* purchaser without notice, he should plead such claim.

5. **Fraudulent Conveyances:** EVIDENCE OF THE VENDOR'S INSOLVENCY. In the trial of an issue, whether a sale of property in dispute was fraudulent as to the creditors of the vendor, evidence of the insolvency of the vendor more than a year after the sale is irrelevant.

6. ———: PRESUMPTIONS : BURDEN OF PROOF. Evidence of the possession of the property by a claimant of it is *prima facie* evidence of his ownership of it; and in the trial of an issue, whether the sale of that property to such claimant was fraudulent as against the creditors of the vendor, who attack the *bona fides* of the transaction, such creditors have the burden of showing the sale to have been fraudulent.

7. ———: ———. The fact that the vendor of property is insolvent, and that the vendee is closely related to him, does not raise any legal presumption of fraud. These are mere circumstances to be considered by the trier of the facts in the determination of the good faith of the transaction as to creditors of the vendor.

*Appeal from the St. Charles Circuit Court.*—Hon. W. W. EDWARDS, Judge.

AFFIRMED.

*Theo. Bruere, C. J. Walker* and *Charles Martin,* for the appellant.

*O. J. Mudd,* for the respondent.

THOMPSON, J., delivered the opinion of the court.

In this case the plaintiff took out an execution upon a judgment in his favor, as administrator of the estate of S. R. Martin, deceased, against James W. Fox and Henry Fox. The sheriff levied the same on two mules, as the property of the defendant James W. Fox. They were at the time of the levy in the hands of James A. Farmer. Farmer served the sheriff with a notice

and affidavit, claiming the mules as his property, in compliance with section 2366 of the Revised Statutes of 1879. The plaintiff thereupon gave an indemnifying bond to the sheriff, as provided in the statute, who returned the execution, together with the claim of Farmer and the indemnifying bond, into court. Thereupon the plaintiff filed in court, under the provisions of section 2367 of the Revised Statutes of 1879, the following answer to the claim made by Farmer: "Now comes Charles Martin, administrator of the estate of S. R. Martin, deceased, and denies that James A. Farmer is in good faith the lawful owner of the whole property seized under the above execution, to-wit, of the two mules, one large black horse mule and one dark-bay horse mule ; and denies every other allegation contained in the claim of said James A. Farmer, served on the sheriff in the above cause."

It is observed that this answer does not in terms set up that the mules in controversy had been transferred by the defendant James W. Fox to Farmer for the purpose of hindering, delaying or defrauding the creditors of Fox. In *Claflin v. Sommers*, 39 Mo. App. 419, this court held that an attaching creditor cannot, under a general denial of an interplea in an attachment suit, prove that the goods were transferred to the interpleader in fraud of the creditors of the defendant in the attachment. Whatever doubt may have been cast on this conclusion by the decision of the supreme court in *Young v. Glasscock*, 79 Mo. 574, there is no doubt that it is in accordance with the prevailing American doctrine that fraud is an affirmative defense which must be specially pleaded, in order to be proved. *Jenkins v. Long*, 19 Ind. 28 ; *Farmer v. Calvert*, 44 Ind. 212 ; *Keller v. Johnson*, 11 Ind. 337 ; s. c., 71 Am. Dec. 355 ; *Clapp v. Cedar County*, 5 Ia. 15 ; s. c., 68 Am. Dec. 678 ; *Gushee v. Leavitt*, 5 Cal. 160 ; s. c., 63 Am. Dec. 116 ; *Hynson v. Dunn*, 5 Ark. 395 ; s. c., 41 Am. Dec.

100 ; *Giles v. Williams*, 3 Ala. 316 ; s. c., 37 Am. Dec. 692 ; *Davis v. Hooper*, 4 Stew. & Port. ( Ala.) 231 ; s. c., 24 Am. Dec. 751. Here, the allegation of the answer falls entirely short of a charge that the property in controversy had been conveyed to Farmer by James W. Fox for the purpose of hindering, delaying or defrauding the creditors of the latter. Even the denial "that James A. Farmer is the lawful owner in good faith of the *whole* of the property seized under the above execution" is consistent with the conclusion that he is in good faith the lawful owner of a *part* of it. The parties, nevertheless, seem to have tried the case on the theory that the issue of fraud, above stated, was raised by the form of the answer, and the court gave, at the request of both parties, instructions which were tendered on that theory. The jury returned a verdict for the claimant, judgment was entered accordingly, and the plaintiff appeals to this court.

I. The first assignment of error is that the court should not have rejected certain questions which were put to witnesses, tending to show James W. Fox's financial condition *subsequent* to the sale of the mules by Fox to Farmer. We observe that this error is not aptly assigned, and on this point of practice we call attention to what was said in *Honeycutt v. Railroad, post*, p. 674, and the cases cited. There were as many as *six* exceptions saved to rulings of this kind in divers places in the record, and the appellant does not state, by reference to the page of the record, or otherwise, to which of them he specially refers.

We have, however, looked at them all, and we see no error in the court's rulings. In the first place, as already pointed out, there was no issue raised by the pleadings as to any fraudulent sale of the property in controversy from James W. Fox to Farmer, and accordingly there was no issue to which the question of Fox's solvency at the time of such sale was at all relevant.

This of itself is sufficient to justify the action of the trial court.

But beyond this, it is proper to say, in view of the fact that the parties seem to have tried the controversy as though such an issue was in the case, · that the question of the solvency of James W. Fox at the time when he sold the mules to Farmer was very fully and elaborately gone into. Indeed, a large portion of the record is taken up with such evidence, and nothing was excluded which related to the time of the transaction. Some of that which was excluded did, however, relate to a period of time more than a year subsequent. The financial status of parties at dates anterior to a transaction is admissible, on the theory of the continuance of things shown to exist, and can in its very nature· have no backward operation.

II. Complaint is made of the instructions. They seem to have been nearly all erroneous, but, considering the state of the issues, the errors were all against the claimant.

·*First*. The following, given at the request of the claimant, is complained of: "The court declares the law to be that, before the plaintiff Martin can recover in this case, he must prove, by a preponderance of the testimony, that the sale of the mules by Fox to Farmer was made to defraud, hinder or delay the creditors of Fox, and that Farmer participated in this design of Fox, to so hinder, delay or defraud his creditors; and the jury are further instructed that, if all the circumstances in evidence in the case can be as well consistent with the good faith as with the dishonesty of Farmer's intentions, you must find for the interpleader Farmer."

At the request of the plaintiff, the court gave the following: "Before the interpleader Farmer can recover in this cause, he must satisfy the jury that he purchased the mules in controversy in good faith and for a valuable consideration paid by him at the time of such purchase.'

It is true, as the appellant argues, that these instructions are contradictory ; but, as that given for the claimant was right and that given for the plaintiff was wrong, only the claimant could have been harmed by the contradiction. The claimant was in the possession of the mules, claiming title to them, at the time of the levy. These facts were *prima facie* evidence of his title, and it devolved upon the plaintiff to show that they did not belong to him, but that they belonged to James W. Fox, if such was the fact. Nevertheless, the claimant did assume the burden of making good his title at the outset, and he sustained the burden by evidence which was clear. He showed a purchase from James W. Fox for a full consideration ; and there was nothing to impeach his title, except such suspicions or surmises as could arise from the fact that Fox was his brother-in-law, and was being sued by his creditors. There was nothing in the circumstances attending the levy, which, as the appellant argues, operated in law to change the burden of proof and put it upon the claimant. He held a chattel mortgage upon the mules and other personal property. It had been filed for record in the recorder's office. The mules were in the possession of James W. Fox, the mortgagor. A deputy sheriff visited Fox with an execution, and notified him of his intention to levy upon the mules ; but, upon Fox's promise to bring the mules in the morning to St. Charles, and there surrender them to the sheriff, if he could not fix the matter up with the plaintiff's attorney, the deputy allowed him to retain them, and did not make the levy. Fox did not keep this promise, but drove the mules to St. Charles in the night, and the next day delivered them to Farmer, who thereupon satisfied of record the chattel mortgage, releasing the other property included in it to Fox's creditors. Afterwards, on the same day, the sheriff levied the execution of the plaintiff on the mules. Fox

acted unfaithfully with the sheriff, but he appears to have done it in an effort to keep faith with his mortgagee. There is no evidence that the debt, for which Farmer took the mules and satisfied the chattel mortgage, was more than the value of the mules, but, as the debt was at that time two hundred and fifty-nine dollars, the contrary is a fair inference. It would be idle to discuss the question that, to overthrow the title of the parties in possession of personal property, on the theory of his having acquired it through fraud, the burden of proof of the fraud is on the party seeking to overthrow the title. It is a fundamental principle that fraud is not presumed, but that honesty and good faith are presumed, and that the burden of proving fraud is on the party alleging it. But here we must also renew the observation that it is not even alleged in the pleadings.

*Second*. The plaintiff requested the following instruction:

" 6. If the jury believe that the mules in controversy were sold to said Fox by S. R. Martin, and the judgment upon which they were taken in execution by the sheriff was rendered for the purchase price of said mules, then the interpleader Farmer cannot recover in this suit, unless he is an innocent purchaser [for value, without notice of the existence of such prior claim for the purchase money ; and, if said Farmer paid for said mules exclusively by claims held by him against Henry and James W. Fox, and by giving of his own note to James W. Fox, then he is not an innocent purchaser for value as against such execution creditor of said James W. and Henry Fox."

The court refused to give this instruction as requested, but gave it in the following form :

" 7. If the jury believe that the mules in controversy were sold to said Fox by S. R. Martin, and the judgment upon which they were taken in execution by

the sheriff was rendered for the purchase price of .said mules, then the interpleader Farmer cannot recover in this suit, unless he is an innocent purchaser for value, without notice of the existence of such prior claim for the purchase money ; and, if said Farmer paid for said mules exclusively by claims held by him against Henry and James W. Fox, he is not an innocent purchaser for value.''

We do not think it necessary to inquire whether, in· a proper state of the pleadings, this ruling was correct or not. There was no issue in the pleadings as to whether the judgment, under which the execution in favor of the plaintiff was issued, was for the purchase money of these mules. The statute under which this proceeding took place contemplates that there shall be written pleadings, as in civil actions. ''The execution creditor shall answer or demur to the claim returned by the officer, on or before the second day of the term, and the claimant may reply to the answer within such time as may be directed by the court ; and all proceedings in relation to such claim shall be governed, as far as practicable, by the law relating to pleadings and practice in civil actions.'' R. S. 1879, sec. 2367. The court ought not to give instructions on issues not made by the pleadings. This is a fundamental rule in our practice.

But here, if there had been such an issue raised by the pleadings, the evidence would not have warranted any instruction on the subject. The evidence, at most, went no further than to show that *one* of the mules was one for the purchase price of which the plaintiff had recovered the judgment. But this mule together with the other, which was the subject of the levy, had been sold by James W. Fox to Farmer in September, for a consideration, the greater portion of which was *not* the cancellation of 'an indebtedness owing by Fox to Farmer. In the following February they had been resold by

Farmer to Fox, together with other chattels, Fox giving to Farmer the chattel mortgage already spoken of, for the purchase money. Besides, there was no evidence whatever, direct or circumstantial, tending to show that Farmer knew that the mules had been purchased of the plaintiff's intestate, and not paid for; and his own evidence was distinctly to the effect that he had no knowledge that such was the fact. There was, therefore, no appropriate case made by the evidence, even if there had been such an issue in the pleadings, for any instruction on this question; and the ruling of the court, above stated, was, therefore, not harmful to the plaintiff.

*Third.* The plaintiff requested, and the court refused, the following instruction :

"8. If the jury believe that James W. Fox was insolvent, or largely indebted at the time of the alleged sale of said mules by said Fox to his brother-in-law, James Farmer, the inference which the law draws from such sale between persons so related is that the same was made to defeat the collection of debts against said Fox; and, to overcome this inference or presumption, it devolves upon said Farmer to satisfy the jury, by a preponderance of the evidence, that he bought said mules of said Fox in good faith, and for a valuable consideration, paid or parted with at the time of such alleged sale."

The court did not err in this ruling. It would have been gross error to give this instruction. The *law* does not draw any inference of fraud from the fact that a person makes a sale of his property, when he is insolvent or largely indebted, although the sale is made to a person closely related to the vendor. Such evidence does not raise any *legal* presumption of fraud, which the vendee is required to overcome. Our law has no rule on this subject, except that the indebtedness or insolvency of the vendor and his relationship to the

vendee are circumstances to be considered by the jury in determining the good faith of the transaction.    Wait on Fraudulent Conveyances, sec. 242; *State ex rel. v. True*, 20 Mo. App. 176.

*Fourth.*  The court was asked by the plaintiff to give the following instruction:  "From the relationship existing between the said Fox and said Farmer, taken in connection with other circumstances, the jury might infer that said Farmer had notice that said Fox purchased said mules of S. R. Martin and had not paid for the same, provided that the jury find that said mules were purchased of S. R. Martin and had not been paid for."    The court refused to give this, but gave the following of its own motion:   " The relationship of the parties is a fact which the jury may take into consideration in connection with other facts and circumstances in evidence in passing upon the issues presented by the pleadings."

This, for the reason stated in the preceding paragraph, was quite as far as the court could go.    To have given the instruction, which was requested, would have been the grossest error.    The idea that there is a rule of law which would impute knowledge on the part of Farmer, from the mere fact of his being the brother-in-law of James W. Fox, that Fox had bought these particular mules from the plaintiff's intestate without paying for them, is the wildest dream,—especially in view of Farmer's own testimony that he did not know the fact.

The judgment will be affirmed.    All the judges concur.