## WASSON, Rec., et al. v. ANGLO-TEXAS OIL CO. et al.

No. 17189.    Opinion Filed Jan. 3, 1928.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

**Fraudulent Conveyances—Foreclosure of Mortgage Given by Corporation on Property Purchased from Insolvent Corporation—Creditors of Vendor Held Without Right to Intervene.**

Where, in an action to foreclose a mortgage by A. against O., a corporation, the common creditors of G., another corporation, file intervening petition alleging: (1) That they are common creditors of G, which was insolvent and was the former owner of the property in foreclosure; (2) that same was transferred by conveyances regular in form to O., but without authority of G.; (3) that such conveyances were upon terms to be paid partly in cash, part by satisfying creditors, balance by issuing stock in vendee to stockholders of vendor; (4) that said cash payment was made and negotiable instruments in a large sum delivered to and received by creditors in payment of their claims against G., and no allegation as to default in delivering stock as per agreement, and where none of such payments, either in money or securities, is tendered back, and where no fraud or lack of consideration is alleged, either in the original sale or in the making and delivering of the subsequent mortgages, and where it is not alleged that any of said transfers were made to hinder, delay, or defeat creditors, and where said interveners have no lien upon, judgment against, or interest in the property under foreclosure, and where the sole ground for relief is based upon the allegation that the original sale of the property was made without authority of its former owner, G., the sustaining of a demurrer to such intervening petition is not error.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Clark Wasson, receiver of First National Bank of Sapulpa, Okla., and other creditors of the Oklahoma Natural Gasoline Company seek to intervene in action by Anglo-Texas Oil Company against Oklahoma Gasoline & Oil Company, to foreclose a mortgage upon the ground that the title of mortgagor and the mortgagee in the property covered by mortgage sought to be foreclosed was not good against the interveners, who claimed a lien thereon. Demurrer to interveners' petition was sustained; appeal by interveners. Affirmed.

Robt. B. Keenan, H. B. Martin, and C. A. Steele, for plaintiffs in error.

Biddison & Campbell, R. W. Kellough, and R. Y. Stevenson, for defendants in error.

BENNETT, C. The Anglo-Texas Oil Company brought suit in the district court of Tulsa county against Oklahoma Gasoline & Oil Company and others to foreclose a second mortgage for $112,802.73 covering certain oil and gas mining leases, two gasoline refineries and equipment. consisting of engines, boilers, compressors, buildings, etc., and a certain contract for the purchase of gas, all belonging to Oklahoma Gasoline & Oil Company. Samuel L. Lubell, trustee, one of the defendants, filed answer and also a cross-petition by which latter he sought to foreclose upon the same property a first mortgage for $450,091.51 and also a subsequent lien for $53,176.08.

All of the property described above belonged to Oklahoma Natural Gasoline Company, a corporation, until on or about the 5th day of March, 1923, when, by conveyances, assignments and transfers in proper form executed by its president and attested by its secretary with the corporate seal attached and properly acknowledged, it conveyed said property, upon a consideration of $200,000, to Oklahoma Gasoline & Oil Company. There-

after, the latter company executed and delivered the mortgages herein sought to be foreclosed covering this and other property to Anglo-Texas Oil Company and to Samuel L Lubell, trustee. Upon application a receiver for this property was appointed by the court.

This appeal involves the rights of certain common creditors of the Oklahoma Natural Gasoline Company to intervene in this foreclosure proceeding for the purpose of having their claims against said company paid out of the property conveyed and mortgaged as hereinbefore set out.

Their first intervening petition was predicated upon the theory that the Oklahoma Natural Gasoline Company had and should be permitted to assert a vendor's lien upon the property transferred by them to the Oklahoma Gasoline & Oil Company by reason of the fact that parts of the consideration for such transfer had not been paid or performed. The later petitions in intervention show a change in their theory, and disclose that they rely upon the allegation that the transfers and assignments were made "without the authority of said Oklahoma Natural Gasoline Company, a corporation, its officers, agents and stockholders, * * * and were, therefore, of no effect."

The petition in intervention alleges, inter alia, that the interveners are creditors of the Oklahoma Natural Gasoline Company, a corporation, and were such at the time of the transfer of the properties of said corporation to the Oklahoma Gasoline & Oil Company, and that the debtor is, and has been since such transfer, insolvent, and that all of said properties are now in the hands of a receiver, and they have no adequate remedy at law; that the transfers and conveyances from the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil Company were executed and delivered without the authority of said Oklahoma Natural Gasoline Company, its officers and stockholders, and that, on that account, such transfers were void and of no effect; that the Oklahoma Gasoline & Oil Company took possession of said property under these said transfers, and thereafter executed the mortgages to Anglo-Texas Oil Company and Samuel L. Lubell, trustee, herein sought to be foreclosed, and that said mortgagees had knowledge of all the facts so alleged.

The petition further alleges that the Oklahoma Gasoline & Oil Company, after taking over all of said property, issued negotiable promissory notes payable to "ourselves," and delivered them, before maturity, to the various intervening creditors who are seeking relief in this action, and covering the amounts of their several claims against the Oklahoma Natural Gasoline Company, and it is further alleged that these notes were issued and accepted upon no consideration other than as and for renewals of the obligations theretofore existing between said creditors and the debtor, Oklahoma Natural Gasoline Company.

A demurrer was filed by Samuel L. Lubell, trustee, to the petition of intervention of the Oklahoma Natural Gasoline Company upon the grounds: First, that same fails to state facts sufficient to constitute a cause of action; second, that there is a defect of intervening parties defendant; third, that there is a misjoinder of causes of action; fourth, specifically demurring for that every claim of each creditor did not state facts sufficient to constitute a cause of action. A similar demurrer was filed on behalf of the plaintiff, Anglo-Texas Oil Company, a corporation. The court, upon consideration of these demurrers, held that the same should be sustained, and from this action the case is appealed here by the interveners for review. On page 2 of the brief of plaintiffs in error it is stated:

"The only assignment of error is that the court erred in sustaining said demurrers of the Anglo-Texas Oil Company and Samuel L. Lubell, trustee."

It might be said in passing that, in the oral argument of this case, the sole ground of error alleged or contended for was the one set out above. Did this petition state a cause of action? The first inquiry is: What sort of proceeding is this? In the pleadings, in the briefs, and in the oral argument, this action has been treated by each of the parties, through their respective counsel, as an action in the nature of a creditor's bill, and, necessarily, the one crucial, essential and determinative inquiry is: Was this transfer by the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil Company a fraudulent transfer? Was it a fraudulent conveyance? That is, a conveyance made in fraud of its creditors by the transferring company and with a knowledge of that intent on the part of the transferree? Was it a conveyance made with the fraudulent intent of hindering, delaying or defrauding creditors? And having these inquiries in mind, we will examine the petition from its four corners to determine whether or not it alleges a transfer for that purpose.

(1) It is not alleged in the petition that there was any **fraud** in the sale of the properties of the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil

Company, or that same was without, or for, an inadequate consideration.

(2) It is not alleged that there was any **fraud in the execution or delivery of the conveyances** which transferred the properties of the Oklahoma Natural Gasoline Company to Oklahoma Gasoline & Oil Company.

(3) It is not alleged that there was any **fraud or failure of consideration in the making or taking of the mortgage made by Oklahoma Gasoline & Oil Company to Anglo-Texas Oil Company.**

(4) There is no **fraud or failure of consideration** alleged in the making or taking of the mortgages from the Oklahoma Gasoline & Oil Company to Samuel L. Lubell, trustee, the foreclosure of both of which mortgages is sought in this action.

(5) It is not alleged that plaintiffs in error or any of them, prior to the filing of the petition in intervention, obtained a **judgment upon their claims,** nor is it alleged that they or either of them **have any lien** upon the property involved.

(6) It is not alleged in the petition that the **claims of the interveners** are admitted; and

(7) It is not alleged that the interveners are all the creditors of the Oklahoma Natural Gasoline Company, or that they sue in behalf of all such creditors.

Under the first head as to fraud, the only allegations which are even directed towards this point are that these transfers "were so executed and delivered and recorded without the authority of said Oklahoma Natural Gasoline Company, a corporation, its officers, agents and stockholders, and * * * on that account they are void and of no effect." It is not alleged that these transfers were made without their knowledge, nor without their consent, nor without their procurement, nor even is it hinted that it was against their will. A corporation executes its transfers by its president and has the same attested and its corporate seal attached by its secretary, all as provided by law, and when transfers are so executed, acknowledged and delivered, they are presumed to be legal and binding and to have been executed for a proper consideration. The petition in definite terms sets out that these transfers were made in the **exact way that** the law requires. There is no allegation that the president and secretary of the corporation, or that the corporation itself, or any officer thereof, **intended to hinder, delay or defraud any creditor,** nor that the purchaser, **the oil company, had any such purpose or**

**intent,** or knew of any such purpose or intent. On the contrary, the petition alleges that the purchaser agreed to pay and the seller agreed to accept a consideration for these properties of $200,000, $30,000 of which was paid in actual cash, more than $34,000 in negotiable instruments, presumably collectible, and the balance was to be paid within a reasonable time after the transfer upon conditions suitable to the parties. The amount of the cash payment, plus the amount of the payment by negotiable instruments, inured to the benefit of or was paid directly to these petitioning interveners. Not one dollar of the money and not one scrap of the negotiable paper has been up to this time tendered back by these petitioning creditors.

The rule laid down in the following jurisdictions is that it is necessary for one seeking relief against an alleged fraudulent conveyance or transfer to allege that it was made with intent to hinder, delay or defraud creditors: Wetherly v. Straus, 93 Cal. 283, 28 Pac. 1045; National State Bank v. Vigo County Nat. Bank, 141 Ind. 352, 40 N. E. 799; Bentley v. Dunkle, 57 Ind. 374; Van Vliet v. Halsey, 37 Kan. 116, 14 Pac. 482; Crooke v. Hume, 33 Ky. L. 162, 109 S. W. 364; Carpenter v. Cushman, 121 Mass. 265; Hogan v. Burnett, 37 Miss. 617; Martin v. Fox, 40 Mo. App. 664; Morgan v. Bogue, 7 Neb. 429; Pritz v. Jones, 117 App. Div. 643, 102 N. Y. S. 549; Dalrymple v. Security L. & T. Co., 9 N. D. 306, 83 N. W. 245; Byrne, etc., Dry Goods Co. v. Willis-Dunn Co., 23 S. D. 221, 121 N. W. 620; McDonald v. Sullivan, 135 Wis. 361, 116 N. W. 10.

In the case of Wetherly v. Straus, 93 Cal. 283, 28 Pac. 1045, it is said, in substance, that as the intent to defraud creditors is a question of fact, and not of law, it is necessary for one, who would avail himself of this fact to set aside a completed transfer of property by a debtor, to aver it in his pleading as one of the elements of his cause of action or defense. In the case of Hutchinson v. Michigan City First Nat. Bank, 133 Ind. 271, 30 N. E. 952, it is said, in substance, that real property conveyed before judgment cannot be subjected to the payment thereof, unless in an action brought for that purpose it is **alleged and proved** that it was conveyed with intent to put it beyond the reach of the creditor. To the same effect: Denehy v. Stewart. 41 Cal. App. 88, 181 Pac. 839; Hopkins v. White, 20 Cal. App. 234, 128 Pac. 780.

Section 6018, C. O. S. 1921, is as follows:

"Fraud only invalidates contracts of debtor.

In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract."

Section 6025, C. O. S. 1921, gives the debtor a right to prefer one or more of his creditors and to execute transfers of, or make mortgages upon, either real or personal property for that purpose when done in good faith. Nix v. Underhill, 8 Okla. 123, 56 Pac. 959; Union Trust Co. v. Hendrickson, 69 Okla. 277, 172 Pac. 440.

What, therefore, is the equitable ground set up in this petition which will give the right either to the transferring corporation or its common creditors to intervene in this action to foreclose a mortgage? Is there anything illegal, immoral, unbusinesslike in this transfer?

"A corporation, as between itself and its creditors, is simply a debtor and does not hold its property in trust or subject to a lien in their favor in any other sense than does an individual debtor." Porter v. Rott, 116 Okla. 8, 243 Pac. 160. (Emphasis ours.)

In the case of Union Coal Co. v. Wooley, 54 Okla. 391, 154 Pac. 62, the court holds:

"Where there is neither a consolidation nor a merger, and one corporation buys all the property of another for full value and without fraud, the property will pass to the purchasing corporation free from the claims of creditors of the selling corporation." (Emphasis ours.)

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud, or sometimes even mere mismanagement in respect thereto; but as between itself and, its creditors, the corporation is simply a debtor and does not hold its property in trust or subject to a lien in their favor in any other sense than does an individual debtor." Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 37 L. Ed. 1113.

Having in mind the allegation that the conveyances in the case at bar were without authority of the corporation and its officers, the case of Force v. Age-Herald Co., 136 Ala. 271, 33 South. 866, is illuminating. The court says:

"A creditor cannot attack a corporate transaction" on the ground that it is "ultra vires merely. He can only assail it on the ground that its interest or effect is to fraudulently
129—8

divert the corporate assets from his debt." (Emphasis ours.)

In this connection also our statute, section 5270, C. O. S. 1921, is pertinent:

"Every instrument affecting real estate or authorizing the execution of any deed, mortgage or other instrument relating thereto, executed and acknowledged by a corporation or its attorney in fact, in substantial compliance with this chapter, shall be valid and binding upon the grantor, notwithstanding any omission or irregularity in the proceedings, of such corporation or any of its officers or members, and without reference to any provision in its constitution or by-laws."

Sections 5285, 5286, and 5287, Id., provide, in substance, that every deed or other instrument affecting real estate (unless executed by an attorney in fact) must have the name of such corporation subscribed thereto by its president or vice president, and attested by its secretary with corporate seal attached, and must be acknowledged by the officer subscribing the name of the corporation thereto.

The words "every instrument affecting real estate," used in the foregoing section, are interpreted in the case of Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131, wherein it is held that the conveyance of an interest in an oil and gas lease is a conveyance affecting real estate, and substantial compliance with sections 5285, 5286 and 5287 above is required.

In the case of Culp v. Trent, 99 Okla. 112, 226 Pac. 348, the court says:

"In an action to set aside the title to real estate upon the grounds of fraudulent conveyance, the fraud must be distinctly pleaded and clearly and satisfactorily proven, and will not be implied from doubtful circumstances, which only awaken suspicion." (Citing Lemp Brewing Co. v. Guion, 17 Okla. 131, 87 Pac. 584; Oklahoma National Bank v. Cobb, 52 Okla. 654, 153 Pac. 134.)

Perhaps one of the most usual allegations in a petition to set aside a transfer is: (a) That the transfer is without consideration; or (b) that the consideration is so disproportionate to the value of the property as to shock the conscience of the chancellor; or (c) that the parties at the time they made the purchase or exchange did not intend to carry out the contract as made.

This record may be searched in vain for any pertinent evidence that the consideration to be paid for the property was insufficient, nor is it contended for a moment that there was any fraudulent purpose on the part of the purchaser, the oil company, at the time of the purchase, to refuse to perform. There

is likewise no effort to allege any false representation or misstatement of fact, or the withholding of any information with reference to this transfer, all or some of which things are generally present where a fraudulent transfer is carried out.

What, then, is the situation at bar according to the allegations of the petition, which must be the determining factors in this inquiry? An embarrassed private corporation is unable to run its business, pay its bills, and satisfy its creditors, is driven to the decision to sell its property to another corporation desiring to take it over. It executes through its appropriate officers deeds, transfers and assignments, proper and legal in form and in execution, conveying its property for a consideration of $200,000, payable upon terms; the purchaser pays in cash $30,000, and in negotiable notes more than $34,000 additional, and agrees to take up later on the outstanding stock of the old stockholders at par, and pay any remaining debts. The purchasing company takes over the property and includes the same along with other property owned by it in mortgages, a part of the proceeds of which is used to make the payment of $30,000 cash hereinbefore referred to. Subsequently, upon default in the payment of the mortgages, a suit to foreclose the same is instituted, and these creditors, who have received cash, or promissory notes and other satisfactory contract obligations on the part of and from the purchasing company, seek to intervene to declare the sale of the property made by their own corporation to be fraudulent and void upon no allegation whatsoever, except that such transfers were without authority of the corporation and with no allegation of imposition, misrepresentation or bad faith.

The directors of this selling corporation were by law clothed with the management of the property of the corporation and with the right to exercise their business judgment and discretion with reference to its use and disposition. The legal presumption is that they have done so honestly and in a legal manner. Their contract is in writing and imports a fair consideration, and until and unless some clear-cut allegation of bad faith or fraud is made in a proper petition, their acts should stand as the acts of the corporation.

From an examination of the applicable statutes of our state and the decisions interpreting the same, we must conclude that there is neither allegation of fraud nor allegation of facts in the petition of the interveners sufficient to sustain this pleading directed at the setting aside of the completed conveyance.

With reference to point No. 2, it seems perfectly clear from the petition that no act of fraud has been alleged with reference to the execution of the papers of transfer. The argument in point 1 is applicable here.

3 and 4: No argument is required on this point, for there is not a supporting allegation in the petition to the effect either that the mortgagees did not pay or that the mortgagors did not receive, dollar for dollar, the face value, in cash, of these mortgages.

5. With reference to point 5 it may be most briefly stated that it is the general rule, subject to only a few exceptions, that a general creditor must obtain a judgment before he can have relief in equity by way of creditor's bill in setting aside a conveyance. 8 R. C. L. pp. 19, 20. Plaintiff in error admits the general doctrine, but claims to bring himself within the exception that, where the debtor is insolvent and the claim is admitted, a judgment at law, as a condition precedent, is not required, and for this purpose he cites Pomeroy's Eq. Juris. (2d Ed.) p. 5113. Answering this contention of the plaintiff in error, it is observable that the petition of intervention in the case at bar contains no allegation either that the intervening plaintiffs' claims are undisputed or that they are admitted. 8 R. C. L. p. 23, uses this language:

"Where it is sought by a creditor's bill to reach interests and assets of the debtor which are not subject to levy and sale on execution, the exhaustion of the creditor's legal remedies must, as a general rule, be evidenced not only by the recovery of a judgment at law, but by the issuance of an execution thereon to the proper county and the return of such execution unsatisfied, in whole or in part (citing Russell v. Chicago Trust, etc., Bank, 139 Ill. 538, 29 N. E. 37; Bowman v. Breyfogle, 145 Ky. 443, 140 S. W. 694; Overmire v. Haworth, 48 Minn. 372, 51 N. W. 121; Miller v. Melone, 11 Okla. 241, 67 Pac. 479; Gilbert v. Stockman, 81 Wis. 602, 51 N. W. 1076), and the bill itself must contain allegations to this effect, or must show a legal and sufficient excuse for not doing so."

To the same effect, Ladd v. Judson, 66 A. S. R. 267; Ziska v. Ziska, 23 L. R. A. (N. S.) 91.

On page 14 of plaintiff in error's brief he quotes from the case of Scott v. Neeley, 140 U. S. 106, 35 L. Ed. 358, as follows:

"In all cases where a court of equity interferes to aid the enforcement of a rem-

edy at law, there must be an **acknowledged debt** or one established by judgment rendered, * * * an interest in the property or a lien thereon created by contract or by some distinct legal proceedings."

It will be observed in this case that there is in the petition no acknowledgment either directly or by implication of any debt. Plaintiff in error contends further that, where it is impossible to recover a judgment, the same is not required. No such showing is made here. There are some authorities which hold that, where the debtor is hopelessly insolvent, where all his property is in the hands of the court, and where it is useless to secure a judgment and have execution issued thereon, it will not be required. Many of the cases cited by plaintiff in error are based upon the fact that plaintiffs are beneficiaries under some sort of trust or trust agreement, or under some statute, or upon the trust fund theory, which has been much discounted by McDonald v. Williams, 174 U. S. 397; and Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371. The disposition of the Oklahoma court may be seen on this point in Chandler v. Colcord, 1 Okla. 260, 32 Pac. 330; Miller, etc., v. Melone, 11 Okla. 241, 67 Pac. 479; Blackwell v. Hatch, 13 Okla. 169, 73 Pac. 933; Indian Land & Trust Co. v. Owen, 63 Okla. 127, 162 Pac. 818; Porter v. Rott, 116 Okla. 3, 243 Pac. 160.

Perhaps we might base out decision solely upon the failure to secure judgment under the foregoing cases, or upon the fact that there is an improper joinder of causes of action as contended for in the demurrer, under the cases of Utterback v. Meeker, 16 Wash. 185, 47 Pac. 428; Webber v. Dillon, 7 Okla. 568, 54 Pac. 894; St. L. & S. F. Ry. Co. v. Dickerson, 29 Okla. 386, 118 Pac. 140; Kay v. Walling, 98 Okla. 258, 225 Pac. 384; Dunn v. Arbuckle (Kan.) 213 Pac. 655. But in order to deal with this question upon its merits, we choose to base our ruling principally upon two grounds: First. **That since there is no allegation of fraud or absence of consideration, neither the gasoline company nor its creditors have any interest, either direct or remote, in the property formerly belonging to the gasoline company, for,** in the absence of these allegations, the property passed absolutely out of the gasoline company and vested in the oil company.

Even if the transfer had been for the purpose of defrauding creditors it would not have been void as to the fraudulent vendor (section 6020, C. O. S. 1921), nor would such petition, in the absence of fraud, or absence of consideration, be available to the common creditors, under the plain provisions of our statute and the cases interpreting the same hereinbefore set out. The absolute failure of plaintiffs to set forth sufficient facts to constitute a cause of action in their petition is not an inadvertence or oversight, for this was the third petition filed in deference to demurrers interposed. It simply emphasizes the fact that they had no cause of action. This, in itself, will dispose of the case, but there is another obstacle that stands in the way of interveners' recovery, and that is that this sale was made and a good many thousands of dollars in cash and notes were turned to the vendor corporation and the interveners herein. They accepted the money and the notes and have retained both.

Section 5247, C. O. S. 1921, provides:

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, **or the power or authority to make and execute the same, except on the ground of fraud;** but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

Even if we had no positive statute, the plain duty of a court of equity in such circumstances would prevent a recovery by the interveners. The doctrine that "He who comes into equity must come with clean hands", and the familiar requirement that "One who asks equity must do equity", are not empty phrases. To permit the interveners to accept the benefits of this contract, which they now seek to disavow and destroy, would be unconscionable and intolerable. The plaintiff in error argues that this is to invoke an estoppel and that no estoppel has been pleaded. It is quite true that the **defendants** have not pleaded it, but it is equally true that the facts out of which the estoppel arises are pleaded in extenso in plaintiff's petition, and it would be a marvel of inconsistency to hold that a court of equity would aid in recognizing a petition when it affirmatively appears in that petition that plaintiff in good conscience should not assert his right.

Upon an examination of the record we hold that the judgment of the trial court was proper, and the same is is all respects affirmed.

TEEHEE, REID, LEACH, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 14a C. J. p. 707, §2743 (Anno).