## OKLAHOMA NATURAL GASOLINE CO. v. ANGLO-TEXAS OIL CO. et al.

No. 17311. Opinion Filed Jan. 3, 1928.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

1. **Corporations—Sale of Property of Embarrassed Corporation Authorized by Unanimous Vote of Shareholders.**

Where an embarrassed corporation by unanimous vote of its shareholders authorizes the sale of its property for a sum certain, payable partly in cash, partly in paying its creditors, and the balance by stock in vendee issued to stockholders of vendor, held, that such resolution not only authorizes the sale, but also the actual execution and delivery by its officers of the transfers and assignments necessary to pass title.

2. **Same—Title Perfected in Vendee Upon Completion of Details of Transaction—Acceptance of Notes by Creditors of Vendor and Receipt of Stipulated Stock in Vendee by Shareholders.**

Under circumstances in No. 1, where the officers of vendor execute and deliver proper transfers and assignments to vendee upon receipt of the down payment, the

delivery to creditors of a large amount of negotiable notes of vendee payable to "ourselves" and assigned to and received by such creditors before maturity in payment of their several claims, and stock in vendee corporation is issued to stockholders in vendor as per agreement and no lien or mortgage is contracted for or reserved in or upon the property sold, title to same, in absence of fraud or bad faith, passes to purchaser free of any claim by vendor or its common creditors.

### 3. Same—Validity of Mortgage on Property Executed by Vendee.

And where, upon the facts set out in the two paragraphs above, the purchasing corporation thereafter mortgages the property along with other property to secure moneys to make the down payment and to develop the property and make default, and is sued by mortgagees to foreclose, neither said former owner nor its common creditors can maintain an action in intervention where no fraud or lack of consideration is alleged either in the original sale or in the making and taking of the consequent mortgages, and where the petition alleges the receipt of the down payment and the negotiable notes and no offer to restore the same or any part thereof is made, and where the sole ground for relief is based upon the allegation that the original sale of the property was made without authority of the former owner or its officers. and where the proof adduced discloses no fraud or absence of consideration, either in the original sale or in the mortgaging of the property, but does disclose that the shareholders authorized the sale of the property substantially as made, the sustaining of a demurrer to such evidence by the court is not error.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Oklahoma Natural Gasoline Company, a corporation, filed its petition of intervention in the foreclosure suit of Anglo-Texas Oil Company, a corporation, against Oklahoma Gasoline & Oil Company, a corporation, claiming that the intervener was the original owner of the property covered by the mortgage sought to be foreclosed and had a superior interest or right therein as against both the Anglo-Texas Oil Company and Oklahoma Gasoline & Oil Company. A demurrer to intervener's evidence was sustained; appeal by intervener. Affirmed.

Robt. B. Keenan, H. B. Martin, and C. A. Steele, for plaintiff in error.

Biddison & Campbell, R. W. Kellough. R Y. Stevenson. and C. S. Walker, for defendants in error.

BENNETT, C. This is an action commenced by Anglo-Texas Oil Company, a corporation, for the foreclosure of a certain mortgage executed by Oklahoma Gasoline & Oil Company, a corporation, and covering certain oil and gas mining leases, two gasoline plants, together with the equipment therefor, consisting of engines, boilers, compressors, tubing, line shaft, pulleys, buildings, tanks, plant buildings, storage sheds, gauges, meters, electrical equipment, vacuum lines, gas regulators, warehouse stock, office buildings, dwelling houses. office equipment, etc., also a certain contract for the purchase of gas. The notes secured by the mortgage sought to be foreclosed were for $112,802.73 and attorneys' fees, which notes and mortgage were executed by Oklahoma Gasoline & Oil Company, a corporation. The defendant, Samuel L. Lubell, as trustee, filed an answer and cross-petition, in which he sought to foreclose a certain first mortgage for the sum of $450,091.51, executed by the same mortgagor and covering the same property.

The amended petition in intervention filed by Oklahoma Natural Gasoline Company (whose rights are, in this proceeding, sought to be adjudicated) alleges, in substance, that intervener on and prior to March 5, 1923, owned certain oil and gas mining leases, two certain gasoline plants with their equipment, and a certain contract for the purchase of gas—being a part of the property conveyed in the mortgages above set forth—and that on the last-named date Oklahoma Natural Gasoline Company, by its president and secretary, executed deeds and assignments and bills of sale in writing, covering the above property in favor of, and delivered the same to, Oklahoma Gasoline & Oil Company, a corporation, which said papers were filed for record in Creek County, Okla., and

"That the aforesaid pretended conveyances were so executed and delivered and recorded without the authority of the said Oklahoma Natural Gasoline Company a corporation, its officers, agents and stockholders, and that said pretended deeds of conveyance. * * * were and are and have been utterly null and void and of no effect. * * *"

That on the 6th day of March, 1923, the Oklahoma Gasoline & Oil Company executed and delivered to Samuel L. Lubell, trustee, a certain pretended mortgage on the aforesaid property to secure certain notes then

and there executed by said defendant Oklahoma Gasoline & Oil Company to said defendant Samuel L. Lubell, aggregating $450,091.51. A similar allegation is made with reference to a certain mortgage made on the 14th of June, 1923, by Oklahoma Gasoline & Oil Company to Samuel L. Lubell, trustee, to secure notes in the aggregate sum of $53,176.08, which mortgage also covers the property last described.

A similar allegation is made with respect to a certain mortgage made by Oklahoma Gasoline & Oil Company on March 5, 1923 and covering the same property in favor of Anglo-Texas Oil Company, a corporation, to secure the payment of certain notes of the mortgagor aggregating $112,802.73. It is further alleged that each of these mortgagees knew that the transfer from the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil Company was made without the authority of the Oklahoma Natural Gasoline Company.

There are further allegations made with reference to dealings had between W. S. Smith and T. D. Cleage, the Oklahoma Gasoline & Oil Company, and Samuel L. Lubell, and perhaps others, but, as we view it, these transactions do not affect the merits of this controversy. Issues were joined on this amended petition by the filing of general denials following which the interveners offered evidence, the determining part of which in this case was as follows:

"Minutes of Special Meeting of the Stockholders of the Oklahoma Natural Gasoline Company, Friday, February 2, 1923, 10:00 a. m.

"Meeting called to order by President M. B. Downs, the following stockholders were present in person and by proxy:

| M. B. Downs | 33218 | Shares | | Yes |
|---|---|---|---|---|
| C. M. Noble | 9150 | " | Proxy | Yes |
| C. W. Noble | 9600 | " | Proxy | Yes |
| R. V. Rule | 550 | " | | Yes |
| Lena Mallory | 500 | " | Proxy | Yes |
| W. C. Stallard | 1000 | " | | Yes |
| F. B. Reed | 2500 | " | . | Yes |
| J. W. Adams | 2500 | " | Proxy | Yes |
| E. T. Creegan | 1200 | " | | Yes |
| J. T. Verlin | 2500 | " | | Yes |
| I. F. McGee | 9750 | " | | Yes |
| H L. Wilson | 2500 | " | | Yes |
| Helen Taylor | 500 | " | | Yes |

"Mr. Downs stated the purpose of the meeting was to consider the sale of the assets of the Oklahoma Natural Gasoline Company; he called attention to the fact that the Oklahoma Natural Gasoline Company was badly in debt, and that he had been trying to finance the company for sometime, but was unable to do so on account of the excessive commissions wanted by the brokers for the sale of the stock. He stated that he had a proposition to consolidate the Oklahoma Natural Company with some other properties, the consideration being $200,000. The new company to assume all liabilities and take over all assets; they also agree to pay to the First National Bank $30,000 at once to apply on the indebtedness of the Oklahoma Natural Gasoline Company. The new company agrees to purchase all the stock of the stockholders of the Oklahoma Natural Gasoline Company within a reasonable time at par.

"Moved by F. B. Reed that the board of directors of the Oklahoma Natural Gasoline Company be authorized to sell the assets of the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil Company of Delaware for a consideration of $200,000. Any surplus over and above the indebtedness of the Oklahoma Natural Gasoline Company is to be prorated among the stockholders of the Oklahoma Natural Gasoline Company in stock of the new company as his interest appears in the old company. Each stockholder may escrow his stock in the First National Bank of Sapulpa, Okla., same to be taken up by the Oklahoma Gasoline & Oil Company at par within eight months from date of sale. Be it further resolved if at the end of eight months the Oklahoma Gasoline & Oil Company is making payments, that time be extended for four months with interest at 8 per cent. from the end of the eight-month period. All stock must be escrowed within 30 days of the new issue.

"Seconded by H. L. Wilson, motion carried, there being 75,468 shares voted in favor; none against.

"There being no further business, meeting adjourned.

"R. V. Rule, Secretary.

"M. B. Downs, President"

—and also certain oral testimony from the witnesses R. Y. Stevenson, T. D. Cleage, R. W. Kellough, M. B. Downs, I. F. McGee, and R. B. Keenan, but no part of the oral testimony seems to deal directly with the sale of the properties of the Oklahoma Natural Gasoline Company to the Oklahoma Gasoline & Oil Company, except to indicate that the sale was made under the authority of the minutes of the special meeting of the stockholders of the Oklahoma Natural Gasoline Company on February 2, 1923, set out above, and that no other authority existed or was claimed for such transfer. Perhaps it should be said in passing that such oral evidence by and large reflects good faith,

and no fraud, imposition, misrepresentation or concealment is disclosed.

At the close of the testimony, the Anglo-Texas Oil Company and Samuel L. Lubell, as trustee, severally demurred; the demurrers were sustained; judgment was rendered dismissing the petition of intervention, and, after a motion for new trial was regularly filed and overruled, the case was appealed to this court. The motion for new trial sets out three grounds, the petition in error assigns six grounds.

Appellant's contentions are set out in the following words in its brief:

"It is contended by plaintiff in error that the evidence introduced supports conclusively the proposition that the mortgagees, to wit: Samuel L. Lubell, trustee, and the Anglo-Texas Oil Company, a corporation, are not bona fide purchasers of an equitable lien upon the property of the Oklahoma Natural Gasoline Company, a corporation, because they had actual notice of an equitable lien in the sum of $170,000 of this plaintiff in error"

—and it argues its entire contention under two propositions:

**1. Where purchaser, even for valuable consideration, had received notice of a prior equity, he is not entitled to precedence.**

It cites several Oklahoma cases and numerous cases from without the state, Story's Equity Jurisprudence, Pomeroy's Equity Jurisprudence, and R. C. L. under this head. No application of the law cited is sought to be made to the facts of the case at bar except to urge that:

"The mortgagees * * * had full notice of the fact that the stockholders of the Oklahoma Natural Gasoline Company had authorized the directors of said corporation to sell all of the property of said corporation to the Oklahoma Gasoline & Oil Company for the sum of $200,000, of which sum $30,000 was payable in cash and the remaining $170,000 within eight months' time in accordance with the resolution referred to above."

In a companion case in this court, entitled Clark Wasson, Receiver of First National Bank of Sapulpa, et al. v. Anglo-Texas Oil Co., 129 Okla. 222, 264 Pac. 164, a petition identical in letter and terms to the one herein filed, subject only to an exception hereinafter referred to, was passed upon and was held demurrable upon two grounds: (1) That no fraud or absence of consideration was alleged in the making and taking of this identical transfer: and (2) that the complaining parties recognized and ratified this identical transfer by accepting, according to the terms of the petition, a large part of the consideration without protest or disavowal and without returning such proceeds. And since the facts and pleadings are identical, and the oral evidence adduced in this case discloses no equity, we discover no ground for a different ruling in this case from that in the companion case.

It is quite true that in this case evidence was offered for the purpose of showing that Samuel L. Lubell procured, or aided in procuring, the appointment of one Mark L. Finston as receiver of the properties involved herein, with some sort of an arrangement with M. B. Downs to the effect that if Finston were appointed, and, if and when the price of gasoline should advance to 12 cents per gallon, said Lubell would cause the remainder of the purchase price of the properties due this intervener in the sum of $170,000 to be paid. And that in consideration whereof the said Downs withheld objection to the appointment of Finston. It is true, also, that the plaintiff in error offered a trial amendment of his petition embodying these allegations, but the same was excluded by the court and the action of the court thereon is not presented here as error.

Perhaps this much of the record should be observed. The plaintiff in error intervened in this cause, filing its first petition in intervention, in which it pleaded that it had a vendor's lien on the property sold to the Oklahoma Gasoline & Oil Company, of which the mortgagee had notice. A demurrer was sustained to that petition in intervention. Thereafter, the plaintiff in error joined by its unsecured creditors filed its amended petition in intervention. This new petition was in the nature of a creditor's bill. Demurrers were filed thereto and plaintiff in error confessed these demurrers and took leave to amend. Thereafter, appellant filed its third amended petition in intervention on which the issues were made. It will thus be seen that whatever equities are contended for here were present and alleged in the creditor's bill, which was passed upon in the companion case when the demurrer was sustained to such creditor's bill, which, in all material matters, was identical in terms with the petition herein.

We have examined with considerable care the records, pleadings and proof in this cause, and we are constrained to hold that there is but one determinative, crucial point, and that is as to whether or not the conveyances made by Oklahoma Natural Gasoline

Company, by its proper officers, passed the title of the property therein described to Oklahoma Gasoline & Oil Company. The conveyances are regular on their face, no fraud is alleged, no absence of consideration is claimed. There is not one word of proof to the effect that it was the purpose or intention to hinder, delay, defeat or defraud any creditor, nor does the petition even hint at such a purpose. No misrepresentation or concealment is claimed, no covering up of facts, no preferences or secret trusts. The purchaser paid $30,000 in cash, $34,000 in negotiable promissory notes, and delivered new stock to the old stockholders of the vendor company. It is true that the purchasing company agreed to redeem this stock, but that was an agreement made with the stockholders, and was dependent upon affirmative action on their part. The minutes and resolution require that they should elect to require redemption by depositing their stock in escrow within 30 days from date of issue, and there is no showing that this was done.

It is contended by plaintiff in error that Oklahoma Natural Gasoline Company had a prior equity. The minutes and resolution provided for an absolute sale with no mortgage back, no retention of title, no vendor's lien, no conditional sale, even hinted at. The sale was made upon terms, the down payment of $30,000 cash, $34,000 in negotiable notes, and new stock to be delivered to the stockholders. All this was done. Eight months later purchaser was to redeem at par such of the new stock as had been placed in escrow in bank within 30 days after issue for this purpose. Where was the equitable lien? How did it arise? This contract speaks for itself and was the arrangement of the parties. These stockholders took their own method of securing themselves by placing their stock in escrow in bank. The directors of the selling company, perhaps, would have lost a sale if they had imposed a condition of all cash, or that the property was to be subject to a mortgage or lien, for, from this evidence, it is abundantly apparent that it was the intention that all the property should be combined and mortgaged to secure funds not only for these interveners and their creditors, but for development of the properties, and this was done. There was no word of proof as to the existence of a lien or even a verbal mortgage. The plaintiff in error has briefed but a single question, to wit, that one who purchases with notice of a prior equity takes subject to that equity. There is no proof of an equity here.

There is one other question: Did the officers of Oklahoma Natural Gasoline Company have authority to convey its property under the terms of the resolution? This point is not briefed by plaintiff in error, and the same will be taken as having been waived. Ruby v. Edwards, 89 Okla. 253, 214 Pac. 915, and cases therein cited.

Upon examination of the resolution we conclude that it was the one purpose of this embarrassed debtor, which could not finance itself, to sell its property at the best price and upon the best terms obtainable, and it appears that the officers of the company understood that was what they were to do, and when the resolution was presented, it contained, we assume, the best price and the best terms obtainable, and the sale was unanimously authorized; nothing was left undone; there were to be no more meetings. The word "sell," when used by directors to a president and secretary of an embarrassed corporation with reference to its property, means not only to sell but to convey. Hemstreet v. Burdick, 90 Ill. 444; Hunter v. Eastham (Tex. Civ. App.) 67 S. W. 1080; Benschoter v. Lalk, 24 Neb. 251, 38 N. W. 746; Keim v. Lendley (N. J. Ch.) 30 Atl. 1063; Valentine v. Piper, 22 Pick. (Mass.) 85, 33 Am. Dec. 715.

For general discussion of the law and the citation of authorities applicable to this identical situation, reference is here made to the opinion of the court in the companion case of Clark Wasson, etc., v. Anglo-Texas Oil Co., supra, just decided by this court.

For the reasons assigned in that opinion, as well as those herein assigned, we hold that the trial court committed no error in sustaining the demurrer to the evidence of interveners, and such holding and judgment of the court is therefore affirmed.

TEEHEE, REID, LEACH, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 1374 (Anno); 7 R. C. L. p. 166. (2) 14a C. J. p. 540, §2459. (3) 14a C. J. p. 707, §2743 (Anno).